PER CURIAM.
The Duval County Grand Jury returned two indictments[1] against appellant, Davis, charging violations of Florida’s theft stat *876 ute, Section 812.014, Florida Statutes[2]. A jury found appellant guilty of both charges. We reverse.
In October of 1980, appellant was employed as City Manager of the City of Atlantic Beach. During that month, he attended the Florida League of Cities Convention with the members of the City Commission, including Commissioner/Mayor Howell. All of these individuals planned to spend time at the convention working for the election of Mayor Howell as President of the Florida League of Cities. In anticipation of the expense of such a campaign, both the Mayor’s and the City Manager’s expense accounts had been increased from $1,200.00 each to $1,500.00 each for the 1980 budget year.[3] In preparation for the trip, appellant and each commissioner received per diem and mileage checks. Appellant received $377.20 representing his per diem and mileage for the trip. One hundred thirty-seven dollars and twenty cents ($137.20) of this amount represented mileage. Appellant requested and received an additional twelve hundred dollars ($1,200.00) from the City Comptroller, Mrs. Tucker.
THE MILEAGE CHECK
Mileage and per diem expenses for travel by City of Atlantic Beach employees are governed by resolution. Prior to 1980 these amounts were set by resolution 72-8,[4] *877 which purported to bring the amounts paid and reporting requirements in line with those established for state employees.[5] Evidence at trial showed that this resolution was amended in 1980 by resolution 80-6[6] because the amounts reflected in resolution 72-8 were no longer adequate due to the effects of inflation, and because state reporting requirements were seen as too strict.[7]
Immediately prior to the trip Mrs. Tucker computed the mileage involved and prepared checks for the commissioners based on the mileage and per diem figures set out in resolution 80-6. Appellant and at least one other commissioner received travel monies in cash. There is no evidence that the money was accompanied by any documentation showing a mileage/per diem breakdown, nor is there any evidence that Mrs. Tucker informed the recipients of any such breakdown. The checks introduced into evidence, similarly show only a single sum, with no indication that separate categories of money were included in the amount.
The state did not at trial, and does not now contend that appellant knew the monies he received included money for mileage. Rather, the state contends that appellant should have known, because, as part of *878 his duties, he had drafted resolution 80-6. However, it is clear that all the participants realized that a convention the size of the Florida League of Cities would be quite expensive, especially in light of the Mayor’s ambitions and the concomitant duty to politic and entertain which would fall on the various members of the commission. As previously noted,[8] resolution 80-6 provided for. the expenditure of more than $40 per diem, with supporting documentation.[9] The requirement of prior commission approval, present in resolution 72-8, was deleted in resolution 80-6. Thus, under the guidelines in evidence, it appears that city employees could exceed the $40 per diem cap while traveling on city business, but if they did so without furnishing supporting documentation, they would not be entitled to reimbursement.[10] Among the receipts introduced was appellant’s hotel bill. There is no indication in the record that anyone other than appellant paid this bilí. The amount of the hotel bill added to the amounts of appellant’s other receipts nearly equals the total amount of the expense check, $376.53 as against $377.20.
There is no evidence that appellant expended this money for any purpose except expenses incurred during the convention. Rather, the state’s case was based solely on the fact that a portion of the money which appellant received represented mileage money and appellant rode to the convention in a commissioner’s automobile, the Commissioner having also received an amount for mileage.
The fact that Mrs. Tucker handed him cash, a portion of which, in her mind, represented mileage, cannot support appellant’s conviction of grand theft in light of resolution 80-6 which permitted him to exceed the per diem cap. Nor can Mrs. Tucker’s testimony that appellant did not timely document his expenditures support the conviction in light of the evidence that all of the money was accounted for, albeit tardily, and none of the expenditures were challenged as being for other than a valid municipal purpose.
II. THE EXPENSE ACCOUNT CHECK
At the time appellant received his travel money from Mrs. Tucker, he also received an additional twelve hundred dollars ($1,200.00) in cash. The city budget contained line item expense accounts for the Mayor and the City Manager in the amount of $1,500.00 each. Witnesses were in agreement that this amount was raised from the previous year’s $1,200.00 because it was anticipated that additional entertaining would be necessary at the Florida League of Cities Convention due to the Mayor’s campaign for president of that organization.
In accounting for this money appellant returned in excess of $500.00 cash and two receipts. One of these was identified as a receipt from a luncheon for voting delegates, the other as the receipt from a dinner for the Atlantic City Beach Commissioners. Evidence at trial showed the “luncheon” receipt was actually from the dinner for the commissioners and the “dinner” receipt (in the amount of $452.90) was a “composite.” Appellant testified he received a blank receipt at one of the convention restaurants and filled it in just to have “some record” of money expended at the convention.[11]
The question before us is whether the fraudulent receipt is sufficient evidence from which the jury could have found appellant guilty of grand theft. We hold that under the facts of this case, it was not. Appellant was required to use this money in furtherance of the Mayor’s campaign at the League of Cities Convention. The state *879 introduced no evidence showing or tending to show that appellant used the money for any purpose other than in furtherance of the established municipal purpose of obtaining the Mayor’s election to the presidency of the League.[12]
We do not condone appellant’s failure to properly account at his earliest opportunity for the expenditure of these funds. Nor are we insensitive to the existence of “white collar crime” and the difficulties attendant to proving such offenses. Here, however, the appellant rightfully received the money and attended the convention at which he was to spend it. The City had furnished no guidelines as to how the money was to be spent or accounted for. At trial appellant testified as to the various expenditures represented by the $452.90 receipt.
In the absence of some showing by the state that appellant wrongfully used the money, his convictions cannot stand.
REVERSED.
LARRY G. SMITH, JOANOS and THOMPSON, JJ., concur.

. Indictment number 81-3377-CF charged, in pertinent part, that “... Bill M. Davis, on or *876 between the 21st day of October, 1980, and the 27th day of October, 1980, in the County of Duval and the State of Florida, did knowingly obtain or use or endeavor to obtain or use money of a value of One Hundred Dollars ($100.00) or more but less than Twenty Thousand Dollars, the property of the City of Atlantic Beach, Florida, with intent to deprive the said City of Atlantic Beach, Florida, of a right to the property or benefit therefrom or with intent to appropriate the money to his own use or to the use of any person not entitled thereto, to wit: By causing a check to be issued to said Bill M. Davis in the amount of $377.20 on the account of the City of Atlantic Beach, Florida, and receiving cash from said check in the amount of $137.20 which represented mileage on a trip for which said Bill M. Davis was not entitled to mileage, contrary to the provisions of Section 812.014, Florida Statutes.”
Indictment number 81-3378-CF charged Bill M. Davis with committing the offense, “... by causing a check to be issued to said Bill M. Davis in the amount of Twelve Hundred Dollars on the account of the City of Atlantic Beach, Florida, and receiving the cash therefrom and misappropriating some or all of said $1,200 but at least an amount of $100.00 or more, contrary to the provisions of Section 812.014, Florida Statutes.”

.Section 812.014, Florida Statutes (1979) provides:
(1) A person is guilty of theft if he knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent:
(a) To deprive the other person of a right to the property or a benefit therefrom.
(b) To appropriate the property to his own use or to the use of any person not entitled thereto.
Subsection (2)(b) provides: It is grand theft of the second degree and a felony of the third degree, punishable as provided in ss. 775.082, 775.083, and 775.084, if the property stolen is:
1. Valued at $100.00 or more, but less than $20,000.00. Section 812.012(2) defines “obtains or uses” as:
(a) Taking or exercising control over property.
(b) Making any unauthorized use, disposition, or transfer of property.
(c) Obtaining property by fraud.
(d) 1. Conduct previously known as stealing; larceny, purloining; abstracting; embezzlement; misapplication; misappropriation; conversion; or obtaining money or property by false pretenses, fraud, or deception; or
2. Other conduct similar in nature.

. These expense accounts appear only as line items in the City budget. Members of the City Commission testified that these accounts were to be used to pay expenses incurred while travelling on City business. The record contains no other evidence regarding their use. It is clear that both appellant and the Mayor received mileage and per diem money on this occasion. There is no indication that this money came from or would be credited to their respective expense accounts. In fact, it may be reasonably inferred from the record that these expense accounts were intended to supplement ordinary per diem and mileage expenses.

. City Resolution 72-8 provides:
WHEREAS, it is the opinion of the City Commission of the City of Atlantic Beach, Florida, that there has never been a firm policy as to the re-imbursement to City officials and employees of expenses incurred in matters requiring their presence out-of-town over *877 night, or for any extended period of time, and WHEREAS, it is the opinion of said City Commission that no firm policy exists in regard to re-imbursement to City officials and employees for expenses incurred in the use of private cars on such out-of-town journeys, and
WHEREAS, no firm policy exists in regard to re-imbursement to City officials and employees in respect of expenses incurred for attendance at professional seminars and conventions entailing payment of all reasonable and necessary registration fees, etc.,
NOW, THEREFORE, BE IT RESOLVED BY THE CITY COMMISSION OF THE CITY OF ATLANTIC BEACH, FLORIDA:
1. That, City officials and employees be re-imbursed for expenses incurred in matters requiring their presence out-of-town overnight, or for any extended period of time at the rate of $25.00 per day (conforming to State law covering State officials and employees [sic] and, upon exceptional occasions, with prior City Commission approval and subsequent supporting documentation, the City Commission may allow a larger per diem.
2. Should commercial transportation be used, accommodation should be paid for at the most reasonable rate. In the case of air travel this shall be at Tourist rates.
3. That, City officials and employees be re-imbursed for use of private cars for transportation at the rate of 12c per mile, round trip.
4. That, City officials and employees be re-imbursed in respect of expenses incurred for attendance at professional seminars and conventions entailing payment of all reasonable and necessary registration fees, etc.

. Section 112.061, Florida Statutes (1972). Section 112.061(11) provided that fraudulent expense claims were punishable as second degree misdemeanors.

. City Resolution 80-6 provides:
WHEREAS, it is the opinion of the City Commission of the City of Atlantic Beach, Florida, that the reimbursement rates for travel outside the City as the same is [sic] contained in Resolution No. 72-8 are no longer adequate due to the inflationary factor, and WHEREAS, it is further the opinion of the City Commission that City Officials and employees who are required on periodic occasions to travel outside this City should do so at no expense to themselves for normal accommodations and normal travel arrangements,
NOW, THEREFORE, BE IT RESOLVED BY THE CITY COMMISSION OF THE CITY OF ATLANTIC BEACH, FLORIDA:
1. That, City Officials and employees be reimbursed for expenses incurred in matters requiring their presence out of town overnight, or for any extended period of time at a rate not to exceed $40.00 per 24-hour period with supporting documentation. Additionally, normal room accommodations will be paid over and above the maximum $40.00 per day per diem, provided supporting documentation is furnished.
2. Should commercial transportation be used, accommodation should be paid for at the most reasonable rate. In the case of air travel this shall be at Tourist rates.
3. That, City officials and employees be reimbursed for use of private cars for transportation at the rate of 20$ per mile, round trip.
4. That, City officials and employees be reimbursed in respect of expenses incurred for attendance at professional seminars and conventions entailing payment of all reasonable and necessary registration fees, etc.

.We need not decide whether a municipality may enact travel provisions at variance with Section 112.061, Florida Statutes. The State did not charge appellant under this Section, nor has appellant defended on this basis. In this regard, see, op. of the Att’y Gen. of Fla. 074-81 (January 14, 1974); op. of the Att’y Gen. of Fla. 076-127 (June 3, 1976).

. See, footnote 6.

. In addition to the provision for exceeding per diem expenses contained in paragraph 1. of resolution 80-6, paragraph 4. provides for payment of all “reasonable and necessary registration fees, etc... ” incurred for attendance at professional seminars and conventions.

. A portion of the City Charter, included in the record, requires the Comptroller to prescribe all forms of accounting and receipts to be used by the City. There is no indication in the record that this was ever done.

. See, footnote 5.

. It has long been settled in Florida that where the State relies solely on circumstantial evidence, the evidence must be such as to exclude every reasonable hypothesis of innocence. McGough v. State, 302 So.2d 751 (Fla.1974); Gunn v. State, 78 Fla. 599, 83 So. 511 (Fla.1919); McBride v. State, 338 So.2d 567 (Fla. 1st DCA 1976).