**UNITED STATES of America, Plaintiff,**

v.

**Michael A. YASHAR, Defendant.**

**No. 98 CR 10.**

United States District Court,
N.D. Illinois,
Eastern Division.

March 30, 1998.

Opinion Denying Reconsideration
April 30, 1998.

Kaarina Salovaara, United States Attorney's Office, Chicago, IL, for Plaintiff.

John E. Farrell of Freeborn & Peters, Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Defendant Michael Yashar ("Yashar") has moved under Fed.R.Crim.P. 12(b) for dismissal of the one-count indictment that charges him with having been a ghost payroller during the period from September 1, 1991 to September 1, 1992, in violation of 18 U.S.C. § 666 ("Section 666"). Here are the portions of that statute (apart from the definitions contained in Section 666(d)) that are relevant for current purposes:

(a) Whoever, if the circumstance described in subsection (b) of this section exists—

(1) being an agent...of a...local...government, or any agency thereof—

(A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that—

(i) is valued at $5,000 or more, and

(ii) is owned by, or is under the care, custody, or control of such... government, or agency; or

shall be fined under this title, imprisoned not more than 10 years, or both.

(b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

(c) This section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business.

Because only one of the now-fully-briefed contentions advanced by Yashar needs discussion to resolve his motion, this opinion will focus on that argument alone.

■ To begin with, there is no question that the City of Chicago met the "circumstance" described in Section 666(b) during the period in question. Although that may perhaps not have been true if the statutory focus were instead limited to the City Council's Committee on Finance (where Yashar was a payroller), the United States is entirely correct in urging that the City itself—and not the City Council or its committee—is the relevant "government" for statutory purposes.

■ As another preliminary matter, the United States is also correct in asserting that the determination of a motion to dismiss an indictment (just as with the equivalent motion to dismiss a civil complaint for failure to state a claim, brought under Fed.R.Civ.P. 12(b)(6)) does not permit the court to go behind the charge to examine whether its factual allegations are true or false. In those terms the indictment is impeccable, containing as it does the allegations that the City received the requisite amount of benefits during the already-described 12–month period and that during the same time frame Yashar "knowingly and intentionally obtained by fraud, and knowingly and intentionally embezzled, stole, obtained by fraud, and without authority misapplied and caused to be misapplied property that was valued at $5,000 or more and which was owned and under the care, custody and control of the City of Chicago...." But having made the point that the allegations of the indictment must be credited as gospel on the current motion, the United States still does not contest Yashar's statement that *less* than $5,000 was paid to him during the only portion of the time frame in question as to which he had waived the statute of limitations (as discussed hereafter). This opinion will therefore proceed on that predicate.

■ For present purposes, then, the factual matrix to be tested under the applicable legal standards is one in which Yashar had signed a limited waiver of the statute of limitations that excluded any criminal charges that were time-barred as of August 13, 1997—so that Yashar's only conduct that remains criminally actionable is conduct between August 13, 1992 and the September 1, 1992 date when he was terminated as a Finance Committee employee. And there is no question that the monies that he received from his allegedly fraudulent scheme during that short window period were far below the $5,000 value specified in Section 666(a)(1)(A), although comparable monies that he had received during the limitations-barred period from September 1, 1991 to August 13, 1992 would have pushed the 12–month aggregate over the $5,000 floor.

Both sides agree that the precise issue posed by this factual scenario is a matter of first impression in any court. What the government points to as purportedly supporting its position that payments received during the time frame outlawed by limitations may be taken into account as long as *some* amount was received during the period that is not time-barred are cases such as *United States v. Valentine,* 63 F.3d 459, 464, 466 (6th Cir.1995) and its predecessor in the same

circuit, *United States v. Sanderson*, 966 F.2d 184, 189 (6th Cir.1992)—cases that hold that where multiple embezzled or fraudulent receipts are part of a single scheme, they may be aggregated to establish the $5,000 statutory threshold.[1] And from those cases United States Mem. 5 seeks to extrapolate to this proposition:

> Although we have found no cases that explicitly discuss the concept of aggregation and its relation to the statute of limitations, it necessarily follows from the concept of aggregation that an indictment properly charges a defendant with a violation of § 666 by aggregating during a one-year period multiple acts of embezzlement, theft, and fraud in a single scheme or plan, including (as here) acts in the scheme outside the statute of limitations (pre-August 13, 1992) and within (post-August 13, 1992). That is, because the jury may aggregate conversions or thefts related to a single scheme, the statute of limitations does not bar a § 666 charge premised on a single scheme where at least some of the conversions or thefts occur within the five year statute.

But that conclusion does not "necessarily follow" at all—instead it is really a total nonsequitur to proceed from a quite permissible "concept of aggregation" to a conclusion that would permit conduct that is itself barred by limitations to be treated as criminally actionable. To be sure, *evidence* of such time-outlawed conduct might well be admissible to permit a jury to infer criminal intent at the time a defendant committed a later crime that is not barred by limitations, or perhaps some other element of a crime committed within the time frame that is not time-barred. But the basic effect of any statute of limitations is that all conduct that antedates the limitations period is no longer itself criminally actionable, and the government's argument here would amount to an impermissible violation of such repose that is guaranteed by the running of limitations.

At the risk of some oversimplification, the legal consequence of the August 13, 1992 dividing line between time-barred and non-time-barred conduct is just as though the indictment had to be rewritten to allege that all of the elements of the Section 666 crime (including the fraudulent obtaining of at least $5,000) were committed by Yashar between that August 13 date and the end date of September 1, 1992—and not during the entire 12–month period preceding that end date. And it appears to be undisputed, though the indictment says otherwise, that the government cannot prove that to have taken place.

Accordingly this Court is prepared to dismiss the indictment *if* the facts as to the amounts that were received by Yashar and as to the times that he received them are as he has represented. Because the manner in which the indictment is drawn, coupled with the earlier-stated proposition that requires this Court to accept the truth of the indictment's allegations, prevents such a dismissal now, this Court must perforce await a statement as to the government's position regarding the actual facts (as distinct from those allegations). It is therefore expected that Assistant United States Attorney Kaarina Salovaara, who is responsible for this case, will promptly advise this Court in that respect so that an order of dismissal can be entered if appropriate.[2]

## MEMORANDUM OPINION AND ORDER DENYING RECONSIDERATION

This Court's March 30, 1998 memorandum opinion and order ("Opinion") dealt with the several issues raised by the Fed.R.Crim.P. 12(b) motion of Michael Yashar ("Yashar") for dismissal of the one-count indictment that had charged him with having been a ghost payroller during the period from September 1, 1991 to September 1, 1992 in violation of 18 U.S.C. § 666.[1] Opinion at 1011 concluded

---

1. As the United States' Mem. 3–5 has said, even before those cases were decided this Court's then colleague Honorable Brian Barnett Duff had announced the same proposition in *United States v. Webb*, 691 F.Supp. 1164, 1168 (N.D.Ill.1988).

2. As stated earlier in this opinion, the disposition announced here makes it unnecessary to address

Yashar's other arguments in support of his motion, though it must be said that at first reading they do not appear to be substantively persuasive.

1. All further references to Title 18 provisions will simply take the form "Section—."

by stating that this Court would dismiss the indictment *if* the facts as to the amounts that had been received by Yashar and as to the times that he received them were as he had represented. When the United States then immediately confirmed that Yashar had accurately stated the underlying facts, this Court dismissed the indictment with prejudice on March 31.

Now the United States has served notice of the proposed presentment of its written Motion To Reconsider the Decision To Dismiss the Indictment. That motion's effort to salvage someone's having blown the statute of limitations on this Section 666 prosecution [2] is unpersuasive, and the motion is denied.

Here the clue to what this Court believes is a mistaken government perspective can be found in the very first sentence of the *Argument* section of its current motion:

> The statute of limitations (18 U.S.C. § 3282) bars prosecution for any non-capital "offense" committed more than 5 years before the return of the indictment.

But that statute defines limitations not by focusing on what happened *more* than five years before the indictment's return, but rather on what happened (or did not happen) *within* the five years preceding the finding of the indictment. Here is the actual language of Section 3282:

> Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

And that "within five years" focus, although in other contexts it might strike the reader as reflecting only the most subtle of distinctions, demonstrates why none of the multiple examples that are advanced by the government supports the indictment here.

In every instance the question posed by Section 3282 is whether the "offense" defined by the relevant substantive statute was "committed" within the limitations time frame. Thus in (say) a bank fraud scheme indictable under Section 1344, the critical question is whether an "execution" of the scheme took place within the five years preceding the indictment—that is the "offense" for purposes of Section 3282. And so *United States v. Longfellow*, 43 F.3d 318 (7th Cir. 1994)—a case sought to be relied upon by the government—actually supports this Court's analysis rather than the government's position (*id.* at 325). And the same is of course true as to the cases dealing with mail fraud (Section 1341), wire fraud (Section 1343), conspiracy prosecutions and the like—all of which the United States seeks to point to as situations where the statute of limitations' watershed is straddled by a defendant's conduct, and where the indictment is found to be timely: In every instance a criminal offense must have occurred *within* the five-year statutory period.[3]

Again as the Opinion pointed out, Section 666 criminalizes not simply fraudulent or other prohibited conduct as such, but only such conduct that involves the taking of "property that ... is valued at $5,000 or more." By the express language and structure of the statute, that amount of taking is an essential element of the indictable "offense" that under Section 3282 *must* have been committed within the five-year time frame antedating the return of the indictment—or in this instance, because of the severely time-limited

---

2. By their very nature, statutes of limitation are inexorable in operation. This Court has had occasion to liken such statutes and other bright-line rules of law to Mr. Micawber's famous couplet in Dickens' *David Copperfield:*

> Annual income twenty pounds, annual expenditure nineteen six, result happiness. Annual income twenty pounds, annual expenditure twenty pounds ought and six, result misery.

In just the same way, an indictment returned just one day short of the expiration of the limitations period provides prosecutorial happiness, while *if* the indictment is returned even a day late, "result misery."

3. RICO prosecutions under Sections 1962 and 1963 pose a special case of the same principle. Because an essential element of the crime is the existence of "a pattern of racketeering activity," and because that term is defined in Section 1961(5) as permitting as much as a ten-year interval between successive acts of racketeering activity, by definition one or more of the acts that make up the "pattern" may have been committed more than five years before return of the indictment. But at least *one* act in the pattern (the indictable "offense") must fall within the limitations period.

waiver of limitations that Yashar signed, must have been committed within the under-one-month period ended September 1, 1992—if the indictment is to survive.

None of the cases cited by the government deals with a comparable situation in which a "no" answer must be given to the question whether the defendant committed the criminal offense, as defined by the operative statute, within the five-year period that is defined by Section 3282. But "no" is the answer to that question here, and that negative answer commands the dismissal of the indictment as time-barred.

In sum, nothing that has been advanced in the United States' current submission calls for a change in the Opinion or in the conclusion that it reached. This Court denies the government's motion to reconsider that decision.