814 So.2d 466 (2002)
The STATE of Florida, Appellant,
v.
Manuel Ceferino DIAZ, Appellee.
No. 3D01-1149.
District Court of Appeal of Florida, Third District.
February 13, 2002.
Rehearing, Rehearing and Certification Denied May 14, 2002.
Robert A. Butterworth, Attorney General, and Michael J. Neimand, Assistant State Attorney; Katherine Fernandez Rundel, State Attorney, and Angelica D. Zayas, Assistant State Attorney, for appellant.
Tew, Cardenas, Reback, and C. Thomas Tew, and Joseph A. DeMaria; Bierman, Shohat, Loewy & Klein, Donald I. Bierman, and Ira N. Loewy, for appellee.
Before SCHWARTZ, C.J., and COPE, and GERSTEN, JJ.
Rehearing, Rehearing En Banc and Certification Denied May 14, 2002.
PER CURIAM.
The State of Florida appeals the trial court's order dismissing one count of first degree grand theft against appellee, Manuel Ceferino Diaz ("defendant"), as timebarred. We affirm.
After Hurricane Andrew destroyed plants and trees throughout Miami-Dade County, the county solicited bids and contracted with the defendant, as president of Manuel Diaz Farms, Inc., to deliver and install new foliage. The county submitted 450 separate purchase orders to defendant's company from May 1993 through May 1995, each for specific foliage for a specific area. The contract could be terminated by either party at any time.
On May 5, 1999, the State charged Guillermo Antonio Cutie ("Cutie"), a public employee, with eight counts of official misconduct in relation to invoices submitted by Manual Diaz Farms, Inc. Over a year later, on August 24, 2000, the State charged the defendant with one count of first degree grand theft in violation of Section 812.014, Florida Statutes (1995), in connection with twenty-three invoices for payment issued to the county between July 7, 1994, and May 22, 1995. The defendant successfully moved to dismiss the charges on twenty-two of the invoices which were beyond the five-year statute of limitations *467 for grand theft. See § 812.035(10), Fla. Stat. (1995). The State was permitted to amend the information to make reference only to the last invoice, dated May 22, 1995, which remained within the five-year statute of limitations under an earlier agreement by the parties to toll the statute of limitations on or about May 17, 2000. However, the State chose to appeal the dismissal.
Section 812.035(10) provides that notwithstanding any other provision of law, a criminal or civil action for grand theft may be commenced any time within five years after the cause of action accrues. The State contends that all twenty-three invoices were part of a common scheme or plan to defraud the county and should be treated as a continuing offense within the five-year statute.
We disagree, based upon a plain reading of Section 812.014. Section 812.014 provides that a person is guilty of grand theft if he knowingly obtains or uses the property of another with intent to temporarily or permanently deprive the other person of that right. The statute is silent on the issue of continuing offenses, with no suggestion that the legislature intended to make grand theft a continuing offense. See State v. King, 282 So.2d 162 (Fla.1973). See also O'Malley v. Mounts, 590 So.2d 437 (Fla. 4th DCA 1991)(noting language of current Section 812.014 is the same as the pre-amended version). Each invoice was a separate taking, concluding the specific work requested in each county purchase order. Therefore, only the final invoice, dated May 22, 1995, falls within the five-year statute of limitations.
We affirm the trial court's dismissal of the twenty-two counts, finding the State failed to charge the defendant within the five-year statute of limitations, despite its knowledge of inconsistencies in the Manual Diaz Farms's invoices as early as May 1999, the time of Cutie's indictment.
Affirmed.
SCHWARTZ, C.J., and GERSTEN, J., concur.
COPE, J. (dissenting).
I respectfully dissent on the statutory construction issue.

I.
The trial court's order sets forth the facts and relevant statutes, as follows:
[The] second amended information is the subject of the Defendant's motion to dismiss and alleges, in pertinent part, that:
GUILLERMO ANTONIO CUTIE and MANUEL CEFERINO DIAZ beginning on or about July 7, 1994 and continuing through June 1, 1995, pursuant to one scheme or course of conduct, did knowingly, unlawfully and feloniously obtain or use.... cash, good and lawful currency of the United States of America, the property of Miami-Dade County .... as owner or custodian, valued at one hundred thousand dollars ($100,000.00) or more, with the intent to either temporarily or permanently deprive Miami-Dade County .... of a right to the property or any benefit therefrom, or to appropriate the property to defendant's own use .... by MANUEL CEFERINO DIAZ submitting MANUEL DIAZ FARMS, INC. invoices, via MIAMI-DADE COUNTY PARKS & RECREATION CONTRACT # AW-0036, for plant material allegedly delivered and installed at Crandon Gardens and at adjacent medians in Crandon Park.... to MIAMI-DADE COUNTY.... for payment and GUILLERMO ANTONIO CUTIE approving said invoices *468 for payment, in violation of s. 812.014(1)(2)(a) and s. 812.035 and s. 775.15(4) and s. 777.011, Florida Statutes.... The applicable time periods set forth in the Florida statute of limitations have been tolled by agreement of the parties on or about May 17, 2000.
(Emphasis added).
STATEMENT OF FACTS
In the aftermath of the destruction of trees and plants on county property caused by Hurricane Andrew, Miami-Dade County solicited bids from vendors to deliver and install trees and plants. Under the terms of the county's Invitation to Bid, although vendors were required to bid and be bound by the specific price they would charge for specific trees and plants, the county was not obligated to purchase anything. Diaz, as President of Manuel Diaz Farms, Inc., submitted Bid Proposal AW-0036 in which he agreed to be bound to deliver and install minimum quantities of various trees and plants at specific costs per tree or plant.
. . . .
Once Diaz' bid was accepted, the county submitted 450 separate Purchase Orders to his company from May, 1993 up to May, 1995.
This prosecution is based upon the State's allegation that approximately twenty three (23) invoices submitted by Diaz pursuant to Purchase Orders for trees and plants delivered and installed at Crandon Park Garden and Crandon Median were falsely submitted. The State alleges that Diaz at times delivered fewer trees than he was obligated to do; at times delivered smaller, less expensive trees than he was obligated to do; and at times delivered different, less expensive trees than he was obligated to do. Twenty two (22) of the invoices were submitted, and payment was received by Diaz, before May 17, 1995. Thus, the only fraudulent invoice submitted within the 5 year statute of limitations was the last invoice, which was submitted on May 22, 1995.
. . . .
RELEVANT STATUTES
Florida Statute § 812.035(10) provides:
Notwithstanding any other provision of law, a criminal .... proceeding under ss. 812.037-812.037 .... may be commenced at any time within 5 years after the cause of action accrues.
Florida Statute § 775.15(4) provides:
An offense is committed either when every element has occurred or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct or the defendant's complicity therein is terminated. Time starts to run on the day after the offense is committed.
(Emphasis added).
Florida Statute § 812.012(9)(c) provides:
Amounts of values of separate properties involved in thefts committed pursuant to one scheme or course of conduct, whether the thefts are from the same person or several persons, may be aggregated in determining the grade of the offense.
. . . .
The State contends that Florida Statute §§ 812.012(9)(c) and 775.15(4) permit this prosecution of crimes which occurred beyond the five year statute of limitations period. The State submits *469 that it is allowed to aggregate separate takings to establish the value necessary to determine the grade of the offense under § 812.012(9)(c). As noted, under § 775.15(4) a crime is committed when all the elements of the crime have occurred or "if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct or the defendant's complicity therein is terminated." The State's position is that since there is a legislative purpose "to prohibit a continuing course of conduct" under § 812.012(9)(c), the crime is not complete for statute of limitations period until the defendant's "complicity therein is terminated" which, in this case, was within the five (5) year statute of limitations period.
While this position seems logical and reasonable, it is not supported by higher court decisions.
Order, December 15, 2000, at 2-4, 7 (footnote omitted).
The trial court ruled that the prosecution was time-barred as to the first twenty-two invoices. The court dismissed count one of the information, with leave to amend so as to proceed with the prosecution on the twenty-third invoice only. The State has appealed.

II.
The State in this case is relying on the statute-of-limitations extender which states, "An offense is committed either when every element has occurred or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct or the defendant's complicity therein is terminated." § 775.15(4), Fla. Stat. (1993) (emphasis added).
This is a prosecution under the theft statute. The portion of the statute relied on by the State provides, "Amounts of value of separate properties involved in thefts committed pursuant to one scheme or course of conduct, whether the thefts are from the same person or several persons, may be aggregated in determining the grade of the offense." Id. § 812.012(9)(c) (emphasis added).
The theft statute allows the State to aggregate what would otherwise be separate crimes in determining the grade of the offense, where the thefts have been committed pursuant to one scheme or course of conduct.
To my way of thinking, this is a situation in which "a legislative purpose to prohibit a continuing course of conduct plainly appears...." Id. § 775.15(4). As I see it, the statute-of-limitations extender applies to this case.
The majority opinion affirms on authority of State v. King, 282 So.2d 162 (Fla. 1973), but that case does not address the statute-of-limitations extender. The King case was decided in 1973 and involved thefts occurring between March and September 1968. At the time of the crimes in 1968 (and for that matter, the decision in 1973), the statute-of-limitations extender did not exist.
At the time of the King decision, the relevant statute of limitations provision was the one quoted in the court's opinion: "Prosecution for offenses not punishable by death must be commenced within two years after commission ..." 282 So.2d at 164 (internal quotation marks omitted). The question in King was whether the quoted statute of limitations for theft ran from (a) the time of the taking, or (b) at the time the victim knew or should have known of the crime, or (c) at the time the victim demanded repayment from the defendant. Id. at 164-65.
*470 The court ruled that the crime was complete at the time of the taking. The court said:
The Florida Statute of Limitations, like the federal one involved in Toussie [v. United States, 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970)], is completely silent on a concept of a continuing, discoverable offense. To create such an exception to the Statute of Limitations is to rewrite a plain and unambiguous statute. If this is a `loophole' that should be closed, we must turn to the legislature to do so. Until the statute is rewritten by the lawmakers, the Statute of Limitations in [a] Florida criminal case runs from the date of the commission of the crime; and, in the case of a prosecution for larceny, the crime is completeand committedupon the taking.
282 So.2d at 167 (emphasis added).
In 1974the year after Kingthe legislature responded to the court's invitation and rewrote the statute of limitations. Ch. 74-383 § 10, Laws of Fla. (codified as § 775.15, Fla. Stat. (Supp.1974)). It is the 1974 enactment which creates the statute-of-limitations extender which is at issue in the case now before us. It is the 1974 enactment which provides that an offense is committed "if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct or the defendant's complicity therein is terminated." § 775.15(4), Fla. Stat.
In 1977, the legislature rewrote the theft statute. Ch. 77-342, §§ 2-4, Laws of Fla. (codified as § 812.012, .014, Fla. Stat.). It is the 1977 enactment which provides that "[a]mounts of value, involved in thefts committed pursuant to one scheme or course of conduct, whether from the same person or several persons, may be aggregated in determining the grade of the offense." § 812.012(9)(c), Fla. Stat.
The King decision thus has no bearing on the question now before us, because here we deal with statutes enacted after King was announced. In King itself, the court recognized that the legislature could change the statute of limitations if it chose to do so.
The inquiry under subsection 775.15(4) is whether, in examining the theft statute, "a legislative purpose to prohibit a continuous course of conduct plainly appears...." The theft statute uses the words "scheme or course of conduct." Id. Where a scheme or course of conduct is shown, the amounts may be aggregated, even though they would otherwise be entirely separate crimes. See id. Under the theft statute, the legislative purpose to prohibit a continuing course of conduct "plainly appears," as required by subsection 775.15(4).
Putting the matter differently, if the statute-of-limitations extender does not apply in this case, it is difficult to imagine a case in which it would apply.

III.
In granting the motion to dismiss, the trial court also relied on O'Malley v. Mounts, 590 So.2d 437 (Fla. 4th DCA 1991). That decision does not address the statute-of-limitations extender created by subsection 775.15(4).
The trial court relied on Rosen v. State, 757 So.2d 1236 (Fla. 4th DCA 2000). That decision actually supports reversal here.
The Rosen case involved a prosecution under the Florida Communications Fraud Act (FCFA). The statute prohibits the use of communications technology in furtherance of schemes to defraud. 757 So.2d at 1238 (quoting § 817.034, Fla. Stat.). The court said, "An ongoing course of criminal conduct which constitutes a scheme to defraud could ... toll the statute of limitations." 757 So.2d at 1238-39. *471 The court upheld the dismissal of several counts, however, because under the facts of the case, there was no scheme to defraud: the crimes were "separated in time and unrelated to one another." Id. at 1239.
The Rosen case involved a different statute, not subsection 775.15(4) and not the theft statute. However, Rosen lends support by analogy. In the present case, the events were all related: there was a series of bills submitted to the County under the same master contract.
The trial court also relied on United States v. Jaynes, 75 F.3d 1493 (10th Cir. 1996), and United States v. Yashar, 2 F.Supp.2d 1009 (N.D.Ill.1998), vacated, 166 F.3d 873 (7th Cir.1999). Those cases construed federal criminal statutes. The federal statutes do not have a statute-of-limitations extender like that created by subsection 775.15(4).

IV.
For the stated reasons, the dismissal order should be reversed.