892 So.2d 1135 (2004)
Franklin W. NOOE, Appellant,
v.
STATE of Florida, Appellee.
No. 5D03-2658.
District Court of Appeal of Florida, Fifth District.
January 7, 2005.
Rehearing Denied February 16, 2005.
*1137 Michael H. Lambert and Steven J. Guardiano, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Douglas T. Squire, Assistant Attorney General, Daytona Beach, for Appellee.
PLEUS, J.
The defendant appeals from his conviction for grand theft of over $100,000, a first degree felony, and his sentence of 35 months imprisonment followed by 25 years probation.
The charge arose out of financial irregularities which occurred at the Rape Crisis Center of Volusia County, Inc., (Center) while the defendant served as its executive director. The defendant raises two primary issues on appeal, the first relating to the denial of his motions for judgment of acquittal. The second asserts he is entitled to a new trial because of the prejudicial admission of evidence and improper closing argument by the prosecutor. We conclude this appeal presents but one meritorious issue. Did the State prove a grand theft felony of the first degree, or does the evidence establish only a grand theft felony of the second degree?
The defendant was charged by amended information with one count of grand theft over $100,000, a first degree felony, with *1138 the charging document specifically alleging:
COUNT I: IN THAT FRANKLIN W. NOOE, from on or about January 1, 1998, through and including August 31, 2001, in the County of VOLUSIA and State of Florida, did knowingly obtain or use, or endeavor to obtain or use cash or U.S. currency of a value of $100,000.00 or more, which was the property of the FLORIDA DEPARTMENT OF HEALTH and/or THE RAPE CRISIS CENTER OF VOLUSIA COUNTY, INC., or any other person not the defendant(s), with the intent to permanently or temporarily deprive the FLORIDA DEPARTMENT OF HEALTH and/or THE RAPE CRISIS CENTER OF VOLUSIA COUNTY, INC., or any other person not the defendant(s) of the property or benefit therefrom or to appropriate the property to the use of FRANKLIN W. NOOE or to the use of any person not entitled thereto, contrary to Florida Statute 812.014(1) and (2)(a). (1 DEG FEL)
The defendant argues that the trial court erred in denying his motions for judgment of acquittal because the State failed to prove that: (1) he was involved in any theft, or (2) if there was a theft, that it amounted to over $100,000. The defendant maintains that all the evidence showed was that the Center may have been mismanaged during his tenure as executive director but not that criminal conduct had occurred.
The standard of review applicable to denial of a motion for judgment of acquittal was set out in Bufford v. State, 844 So.2d 812, 813 (Fla. 5th DCA 2003):
A motion for judgment of acquittal is designed to challenge the legal sufficiency of the evidence. If the State presents competent evidence to establish each element of the crime, a motion for judgment of acquittal should be denied. State v. Williams, 742 So.2d 509, 510 (Fla. 1st DCA 1999). The court should not grant a motion for judgment of acquittal unless the evidence, when viewed in light most favorable to the State, fails to establish a prima facie case of guilt. Dupree v. State, 705 So.2d 90, 93 (Fla. 4th DCA 1998). In moving for a judgment of acquittal, a defendant admits not only the facts stated in the evidence, but also every reasonable conclusion favorable to the State that the fact-finder might fairly infer from the evidence. Lynch v. State, 293 So.2d 44, 45 (Fla.1974). It is the trial judge's task to review the evidence to determine the presence or absence of competent evidence from which a jury could infer guilt to the exclusion of all other inferences. State v. Law, 559 So.2d 187, 189 (Fla.1989). We review the record de novo to determine whether sufficient evidence supports the verdict. Williams v. State, 742 So.2d at 511.
(Emphasis in original).
Before addressing the evidence, analysis of the omnibus theft statute, section 812.014, Florida Statutes, is necessary. This statute includes a variety of offenses related to unlawful appropriation of property, including larceny, obtaining by false pretenses and misappropriation. Crawford v. State, 453 So.2d 1139 (Fla. 2d DCA 1984). See also Thomas v. State, 584 So.2d 1022 (Fla. 1st DCA 1991). In particular, the theft statute provides:
A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently: (a) Deprive the other person of a right to the property or a benefit from the property.
*1139 § 812.014(1)(a), Fla. Stat. In defining "obtains or uses," the theft chapter provides in pertinent part:
"Obtains or uses" means any manner of:
....
[1] [c]onduct previously known as stealing; larceny; purloining; abstracting; embezzlement, misapplication; misappropriation; conversion; or obtaining money or property by false pretenses, fraud, or deception....
§ 812.012(2)(d)1, Fla. Stat. (emphasis added).
In certain types of thefts, such as larceny or false pretenses, criminal intent must be formed at the time of the original taking. State v. Siegel, 778 So.2d 426 (Fla. 5th DCA 2001) and Szilagyi v. State, 564 So.2d 644 (Fla. 4th DCA 1990), hold that when the crime is larceny, the State must prove that the defendant knowingly obtained or endeavored to obtain the property of another, with intent to deprive the owner of property, and the State must prove that the felonious intent existed at the time of the taking. In considering this prosecution under section 812.014, this Court considers whether the evidence presented by the State was legally sufficient to establish any of the traditional common law offenses embraced within the statutory definition of theft. Crawford, 453 So.2d at 1141.
The defendant initially argues that no competent evidence of a theft from Florida's Department of Health (Department) or the Center was presented. The defendant points out that the Department's representative, Nancy Linehan, had no independent knowledge that the defendant unlawfully took sums from the Department during the period charged in the amended information. Linehan, however, testified that the Department disbursed $70,125.65 during the time period alleged in the information to the Center based on invoices submitted by the Center through the defendant, its executive director, invoices which reflected the monies were being used for rape education programs but which other evidence, including the defendant's own admission made during an investigation, established had been falsified. The defendant's claim on appeal that his "admission or confession" was insufficient to support his conviction because corpus delicti was not established is without merit. The State introduced the actual invoices labeled as "falsified" as well as the testimony of Michele Jones, the assistant director of the Center during the defendant's tenure. Jones testified that the defendant had knowingly signed and submitted fraudulent invoices to the Department for rape education programs which had never been conducted. The defendant thus obtained $70,125.65 from the State, Department of Health, by false pretenses, fraud or deception.
The defendant seems to assert something akin to a "Robin Hood" defense, that as executive director of the not-for-profit Center, he could not be guilty of theft of money from a State agency, perhaps because some of the money he obtained may have actually been used for good works, albeit not those good works for which he represented the monies would be used. We categorically reject the defendant's contention that as executive director of the not-for-profit Center he could not, working in his director capacity, have effected a theft of funds from a State agency. A corporation, whether for profit or not-for-profit, operates through its officers and agents. See Browning v. State, 101 Fla. 1051, 133 So. 847 (1931).
Further, the jury could have easily found that in acquiring this money the defendant had the requisite criminal intent which would support a theft conviction. See Brewer v. State, 413 So.2d 1217 (Fla. 5th DCA 1982). This is particularly true *1140 given the evidence that the defendant wrongfully used money belonging to the Center (see discussion infra). While the State did not adduce evidence directly tracing the entire $70,125.65 into the defendant's own pockets, in a prosecution under section 812.014, the State needed only show that the defendant obtained the property of the Department with the intent to either temporarily or permanently deprive that entity of its right to the property. The fact that the defendant obtained the money from the Department through false pretenses while serving as executive director of the Center does not detract from the criminality.
The defendant erroneously relies on Davis v. State, 424 So.2d 875 (Fla. 1st DCA 1982) for the proposition that "felonious intent" was not established. In Davis, a city manager's conviction for grand theft in regard to money issued to him by the city comptroller for mileage and per diem expenses for a convention to which the city manager did not himself drive, was reversed. The appellate court pointed out that the evidence did not show that the defendant knew the monies he received included money for mileage and further failed to show that the defendant used expense money for anything other than a proper municipal purpose.
Contrast that situation to the evidence presented in this case. Much, if not all of the $70,125.65 received from the Department was not used for its intended purpose, rape prevention education programs. As further discussion will show, there was direct evidence reflecting that at least some of this money was used for improper purposes such as personal expenses and personal payments to employees.
While the State adduced overwhelming evidence showing that the defendant had committed a theft from the Department, the question exists as to whether the State established the offense of grand theft of over $100,000, a first degree felony. Section 812.014(2), Florida Statutes, provides in relevant part:
(2)(a)1. If the property stolen is valued at $100,000 or more:
....
the offender commits grand theft in the first degree, punishable as a felony of the first degree, as provided in s. 775.082, s. 775.083, or s. 775.084.
(b)1. If the property stolen is valued at $20,000 or more, but less than $100,000;
....
the offender commits grand theft in the second degree, punishable as a felony of the second degree, as provided in s. 775.082, 775.083, or s. 775.084.
Section 812.012(9) defines "Value" for the purpose of the theft statute and provides in relevant part:
(c) Amounts of value of separate properties involved in thefts committed pursuant to one scheme or course of conduct, whether the thefts are from the same person or from several persons, may be aggregated in determining the grade of the offense.
Thus, if one scheme or course of conduct is involved, the takings could be combined to reach the $100,000 threshold, even if multiple victims are involved.
The defendant relies on State v. Diaz, 814 So.2d 466 (Fla. 3d DCA 2002), in arguing that the annual contracts between the Center and the Department, whereby grants were disbursed to the Center, were separate and distinct and that the thefts during each annual contract period could not be aggregated. In Diaz, the defendant was charged with first degree grand theft in connection with 23 individual invoices he had submitted to Dade County over a period of 11 months for landscaping work in connection with Hurricane Andrew repairs. Each invoice was for specific foliage *1141 for a specific area. The defendant successfully moved to dismiss the charge as to 22 of the invoices which were outside the five year statute of limitations for grand theft. The appellate court affirmed over a strong dissent by Judge Cope. The majority rejected the State's claim that all 23 invoices were part of a common scheme to defraud the county and should be treated as a continuing offense within the five year statute of limitations. The majority explained that the theft statute "is silent on the issue of continuing offenses, with no suggestion that the legislature intended to make grand theft a continuing offense." 814 So.2d at 467. The majority held that "[e]ach invoice was a separate taking, concluding the specific work requested in each county purchase order." Id. The majority ruled that only the final invoice fell within the five year statute of limitations. Judge Cope, in dissent, relied in part on the language contained in section 812.012(9)(c) referenced above, which the majority opinion did not even mention.
Diaz involved a statute of limitations issue where the State attempted to piggy back conduct occurring outside the limitations period onto conduct within the period, thereby eviscerating the statute of limitations as to the earlier conduct. Extension of the statute of limitations is not implicated here. The defendant does not argue that any of the illegal conduct charged here occurred outside the five year statute of limitations period. Diaz is limited to its facts, particularly given section 812.012(9)(c) which, assuming no statute of limitations issues, expressly recognizes the concept of "one scheme or course of conduct" and aggregation of property taken in connection therewith.
The monies taken from the Department could properly be aggregated so that a theft of $70,125.65 was established. Likewise, theft of Center funds could be aggregated with the takings from the Department, given that some of the grant money obtained from the Department was misappropriated by the defendant from the Center for the defendant's and Michele Jones' personal use. The State adduced evidence that the defendant wrote 11 checks totaling $3,535.94 on the Center account made payable to his ex-wife ostensibly for her "insurance." While the defendant was entitled to insurance as part of his benefits package, the president of the Center's Board of Directors at the time the defendant was hired testified that the defendant was never told anything which would have justified these payments out of Center checking funds. The defendant signed 18 checks totaling $5,830 to pay Jones' husband's IRS debt, once again an expense of a personal nature which had not been knowingly authorized for payment by the Board. The defendant also approved a "loan" totaling $4,500 out of Center funds to Jones for personal expenses. There was evidence, including the defendant's own admission to investigators, that he charged personal expenses on Center credit cards though it appears that the sums involved were relatively modest, approximately $2,500. These sums amount to $16,365.94 and combined with the monies obtained from the Department by fraudulent invoices, total $86,491.59.
The State, in order to meet the $100,000 threshold, sought additionally to rely on a $23,545.76 federal tax lien which arose due to the defendant's failure to remit employee payroll tax withholding to the IRS over an 18 month period.
The State contends that substantial competent evidence was adduced that the Center had specifically sought and received grant money from the State which money was earmarked for payment to the IRS of the Center's payroll taxes/withholding but which the defendant did not use for such designated purpose. The State relies on *1142 the testimony of Carol Pozella in this regard.
Pozella testified over objection regarding grants obtained by the Center by way of the Victims of Crime Act (VOCA). She testified based on grant documents and was permitted to testify from VOCA grant application forms of the Center which contained columns reflecting money claimed by the preparer to have already been spent to pay the social security and income tax obligations of Center employees. Pozella's testimony was used to explain the income tax and social security tax reimbursement provisions of the VOCA grant forms but not to place a final figure on the precise amounts involved in this case.
The problem with Pozella's testimony regarding the VOCA grants and documents is that while she understood VOCA grant forms, she was allowed to testify regarding the content of Center documents which were not prepared by her and which were not introduced into evidence by the records custodian. It does not appear that the State had these documents authenticated through a subsequent witness affiliated with the Department or Center. Accordingly, it was error to allow Pozella to testify based on the contents of these documents and her testimony in this regard was not competent to show that the defendant had, on behalf of the Center, expressly sought and obtained grant money based on his representation that said money was earmarked for payment of the $23,545.76 due the IRS.
Michele Jones testified that VOCA grant money was designed to cover IRS payments but it is not clear from her testimony that the defendant, in obtaining this money, had fraudulently represented that such payments had been or would be made.
The admissible evidence adduced by the State did not exclude the defendant's reasonable hypothesis of innocence that mismanagement of Center finances resulted in his failure to transmit funds to the IRS. Indeed, there was evidence presented in the State's case that while the defendant served as executive director, an expansion of the Center was undertaken to other locations in the county. Additional employees were hired, additional facilities were set up and the Center's administrative offices were transferred from Daytona Beach to Ormond Beach. Substantial raises were given to employees. The defendant had indicated to the IRS that the Center did not have enough money to pay everything. There was no direct evidence that the defendant, rather than transmitting the $23,545.76 to the IRS, misappropriated the money. The circumstantial evidence as regards the failure to remit payment of the payroll taxes to the IRS is entirely consistent with non-criminal financial mismanagement. We analogize this case to Benitez v. State, 852 So.2d 386 (Fla. 3d DCA 2003), wherein the Third District reversed a grand theft conviction because the State's evidence was not inconsistent with the defendant's reasonable hypothesis of innocence on the issue of felonious intent. The evidence showed that the defendant ran into unforeseen problems with a home renovation project and it failed to establish that the defendant had acted with an intent to deprive the homeowners of their money.
Because we conclude the State failed to equate non-payment of the monies to the IRS with the defendant's theft of the $23,545.76, the defendant was entitled to a judgment of acquittal as to that element of the prosecution. The evidence then, at most, would reflect theft of $86,491.59, and not an amount in excess of $100,000. The defendant's theft conviction accordingly must be reduced to grand theft, a felony of the second degree ($20,000-$100,000). We have thoroughly reviewed the record and find no abuse of discretion in connection *1143 with the denial of the defendant's motion for new trial. See Woods v. State, 733 So.2d 980 (Fla.1999).
The conviction for grand theft, a felony of the first degree, is reversed and the cause remanded to the trial court with directions to reduce the conviction to grand theft, a second degree felony, and to re-sentence the defendant.
AFFIRMED AS MODIFIED; REMANDED FOR RESENTENCING.
SHARP, W. and GRIFFIN, JJ., concur.