275 So.2d 274 (1973)
STATE of Florida, Appellant,
v.
Larry KING, Appellee.
No. 72-368.
District Court of Appeal of Florida, Third District.
February 27, 1973.
Rehearing Denied April 18, 1973.
*275 Richard E. Gerstein, State's Atty., and Burton Young, Special Asst. State's Atty., for appellant.
Tobias Simon, Miami, for appellee.
Before BARKDULL, C.J., and HENDRY and HAVERFIELD, JJ.
PER CURIAM.
The State of Florida seeks review of the trial court's order dismissing the information charging defendant, Larry King, with the unlawful taking of personal property from Louis Wolfson.
In March 1968, Wolfson agreed to give Jim Garrison, the New Orleans District Attorney, $25,000 in order to help him complete his investigation of the assassination of President Kennedy within the following six months. Pursuant to this agreement, Wolfson was to deliver the money in installments to King who would then give it to Dade State Attorney Richard Gerstein to be turned over to Garrison. By the end of 1968, Wolfson had released the total amount to King. In early 1969, Wolfson informed State Attorney Gerstein that he had discharged completely his commitment to Garrison. Gerstein responded that he received from King only $10,000 of which $5,000 had been delivered to Garrison and that he, Gerstein, was *276 holding the remaining $5,000 for Garrison. During this same period Wolfson discovered that King had defrauded him in a matter unrelated to the Garrison transaction.
Subsequently, Wolfson in November 1969 requested Mrs. Tomberlin, his corporate scretary, to check whether Garrison had received the full $25,000. She reached Garrison in January 1970 and reported to Wolfson that the entire $25,000 had not reached Garrison. About this time Wolfson again contacted Gerstein who reiterated the fact he had received only a total of $10,000 from King. This placed the remaining Garrison money with King, who admitted that he failed to deliver $5,000.[1] In March 1970, Wolfson demanded that King repay the $5,000 by no later than April 20, 1970. He failed to do so, but was able to forestall prosecution. King tendered payment on December 13, 1971 to Wolfson who rejected it. The information was filed on December 20, 1971. Following pretrial discovery, the trial judge granted defendant's motion to dismiss on the grounds that the statute of limitation had run against the offense charged.
The defendant contended that the prosecution was barred by the two year statute of limitations since the information was filed more than two years subsequent to the date of taking the money between March 1968 and September 1968. The prosecution countered that the crime was committed in March 1970, when demand by Wolfson was made for repayment.
The Florida Statute of Limitations against criminal prosecution is F.S. § 932.465(2), F.S.A., which provides: "Prosecution for offenses not punishable by death must be commenced within two years after commission ..." Thus, the controlling question is the time at which the two year statute of limitation involved began to run: (1) at the time the victim knew or by the exercise of reasonable diligence should have know of the crime, or (2) at the time the victim makes demand upon the defendant to pay over.
It is well established in Florida jurisprudence that the statute of limitations to crimes is to be construed liberally in favor of defendants and the offense must be proved to have been committed within the statutory limitations. Mead v. State, Fla. 1958, 101 So.2d 373; Robinson v. State, 20 Fla. 804 (1884); Nelson v. State, 17 Fla. 195 (1879). In offenses not punishable with death, the burden is upon the state to prove the institution of prosecution for the offense charged within two years after the offense was committed. Horton v. Mayo, 153 Fla. 611, 15 So.2d 327 (1943); Gomez v. Spencer, 113 Fla. 220, 151 So. 395 (1933); Rouse v. State, 44 Fla. 148, 32 So. 784 (1902); Anderson v. State, 20 Fla. 381 (1883); Nelson v. State, supra.
Defendant was charged with violation of Florida Statute § 811.021(1)(a), F.S.A. which provides:
"(1) A person who, with intent to deprive or defraud the true owner of his property or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person:
(a) Takes from the possession of the true owner, or of any other person; or obtains from such person possession by color or aid of fraudulent or false representations or pretense, or of any false token or writing; or obtains the signature of any person to a written instrument, the false making whereof would be punishable as forgery; or secretes, withholds, or appropriates to his own use, or that of any person other than the true owner, any money, personal property, goods and chattels, thing in action, evidence of debt, contract, or property or article of value of any kind; or ..."
[Italics Supplied]
*277 Essentially, the prosecution contends that there was no withholding of the funds until Wolfson in March 1970 demanded their return from King and, consequently, the statute of limitation began to run only at that time in accordance with State v. Pierce, Fla. 1967, 201 So.2d 886. We disagree.
First, as the trial judge below found, the money was to have been fully delivered to Garrison within six months of the original March 1968 meeting, for that was the time period stipulated for the completion of the investigation and Wolfson by the end of 1968 had delivered to King the $25,000 for Garrison.
Second, almost a year after the initial March 1968 meeting, Wolfson was informed in early 1969 by State Attorney Gerstein, who was the conduit between King and Garrison, that he, Gerstein, had received only $10,000 from King.
Last, but just about this same time, Wolfson discovered that King had defrauded him in an unrelated transaction.
Clearly, at this stage, Wolfson was on notice or should have been on notice that King by his unreasonable delay already had manifested an intention to evade payment of the remaining Garrison funds.
Nevertheless, the prosecution argues that even if Wolfson knew or should have known of the fund misappropriation by King, the rule in force in Florida is the demand rule recognized in State v. Pierce, supra:
"... The offense had no existence until after a lawful demand, within the meaning of the statute, was made, and from the date of that demand the statute of limitations began to run."
However, Pierce can be distinguished from the case sub judice. In that case, the defendant was prosecuted under F.S. § 811.021(1)(c), F.S.A. which pertains to executors. More important, in Pierce, there was no knowledge of any misappropriation on the part of the executor until a demand was made by the probate court to respond with the funds. And so, recognizing this vital fact, the First District Court of Appeal in Downing v. Vaine, Fla.App. 1969, 228 So.2d 622, interpreted the Pierce case as follows:
"... Thus the holding of the court was to the effect that the statute of limitations barring a prosecution for larceny does not commence to run from the date of the act constituting the larceny, but only from the date that such act becomes known to those having an interest in the fund or its proper accounting."
As previously mentioned, Wolfson in early 1969 learned from his conversation with Gerstein that King was withholding some of the funds for Garrison. Almost simultaneously, he also discovered that King had defrauded him in another unrelated transaction. Plainly, knowledge can be imputed to Wolfson at that time.
We hold that the statute of limitations begins to run at the time the victim knew or by the exercise of reasonable diligence should have known of the crime. To hold otherwise would violate the very purpose of the statute of limitations. See State v. Hickman, Fla.App. 1966, 189 So.2d 254, Toussie v. United States, 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970).
For the reasons stated herein the order of the trial court is affirmed.
Affirmed.
NOTES
[1] The record is not clear with regard to the exact amount of money which King still held. However, the parties involved agreed upon the sum of $5,000.