282 So.2d 162 (1973)
STATE of Florida, Petitioner,
v.
Larry KING, Respondent.
No. 43727.
Supreme Court of Florida.
July 31, 1973.
Rehearing Denied September 24, 1973.
*163 Burton Young, Acting State's Atty., for petitioner.
Tobias Simon & Elizabeth J. du Fresne, Miami, for respondent.
BOYD, Justice.
This cause is before us on petition for writ of certiorari to the District Court of Appeal, Third District. That court has certified that its decision, reported at 275 So.2d 274, is one passing upon a question of great public interest, giving this Court jurisdiction under Article V, § 3(b)(3), of the Constitution of the State of Florida, F.S.A.
The facts of the case, as reported by the District Court, are as follows:
"The State of Florida seeks review of the trial court's order dismissing the information charging defendant, Larry King, with the unlawful taking of personal property from Louis Wolfson.
"In March 1968, Wolfson agreed to give Jim Garrison, the New Orleans District Attorney, $25,000 in order to help him complete his investigation of the assassination of President Kennedy within the following six months. Pursuant to this agreement, Wolfson was to deliver the money in installments to King who would then give it to Dade State Attorney Richard Gerstein to be turned over to Garrison. By the end of 1968, Wolfson had released the total amount to King. In early 1969, Wolfson informed State Attorney Gerstein that he had discharged completely his commitment to Garrison. Gerstein responded that he received from King only $10,000 of which $5,000 had been delivered to Garrison and that he, Gerstein, was holding the remaining $5,000 for Garrison. During this same period Wolfson discovered that King had defrauded him in a matter unrelated to the Garrison transaction.
"Subsequently, Wolfson in November 1969 requested Mrs. Tomberlin, his corporate secretary, to check whether Garrison had received the full $25,000. She reached Garrison in January 1970 and reported to Wolfson that the entire $25,000 had not reached Garrison. About this time Wolfson again contacted Gerstein who reiterated the fact he had received only a total of $10,000 from King. This placed the remaining Garrison money with King, who admitted that he failed to deliver $5,000.[1] In March 1970, Wolfson demanded that King repay the $5,000 by no later than April 20, 1970. He failed to do so, but was able to forestall prosecution. King tendered payment on December 13, 1971 to Wolfson who rejected it. The information was filed on December 20, 1971. Following pretrial discovery, the trial judge granted defendant's motion to dismiss on the grounds that the statute of limitation had run against the offense charged.
"[1] The record is not clear with regard to the exact amount of money which King still held. However, the parties involved agreed upon the sum of $5,000."

*164 "The defendant contended that the prosecution was barred by the two year statute of limitations since the information was filed more than two years subsequent to the date of taking the money between March 1968 and September 1968. The prosecution countered that the crime was committed in March 1970, when demand by Wolfson was made for repayment.
"The Florida Statute of Limitations against criminal prosecution is F.S. § 932.465(2), F.S.A., which provides: `Prosecution for offenses not punishable by death must be commenced within two years after commission ...' Thus, the controlling question is the time at which the two year statute of limitation involved began to run: (1) at the time the victim knew or by the exercise of reasonable diligence should have known of the crime, or (2) at the time the victim makes demand upon the defendant to pay over."[1]
On the basis of these facts, the District Court affirmed the order of the trial court and held that:
"[T]he statute of limitations begins to run at the time the victim knew or by the exercise of reasonable diligence should have known of the crime. To hold otherwise would violate the very purpose of the statute of limitations. See State v. Hickman, Fla.App. 1966, 189 So.2d 254, Toussie v. United States, 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970)."[2]
Subsequently, the following question was certified to this Court:
"[W]hen does the statute of limitations in a larceny case begin to run: (1) at the time the victim knew or by the exercise of reasonable diligence should have known of the crime, or (2) at the time the victim makes demand upon the defendant to pay over?"[3]
We hereby affirm the decision of the District Court of Appeal, Third District, but we feel constrained to point out that the answer to the question propounded by that court is neither (1), nor (2), but rather "none of the above", as will be explained below.
The plain language of Florida's Statute of Limitations is: "Prosecution for offenses not punishable by death must be commenced within two years after commission... ."[4] Of course, "[t]he time within which an offense is committed is a jurisdictional fact in all cases subject to limitation." Mitchell v. State.[5] In fact, a most significant burden of proof is placed upon the State in order to proceed once the jurisdiction of the Court is questioned through the raising of the Statute of Limitations.
As we noted in Horton v. Mayo:[6]
"We have held, as to all offenses not punishable with death, that not only should the information show or allege, but the State must prove, the institution of prosecution for the offense charged within two years after the offense was committed."[7]
One year later, in Lowe v. State,[8] we further noted:
"The law places the burden of proof on the prosecution, upon the trial of a criminal case, to show that the commission of the offense as charged was committed within the two year period prescribed by statute."[9]
*165 Finally, as we concluded in Mead v. State:[10]
"The appellant was not required to raise the question of the statute of limitations as the statute must be construed liberally in favor of defendants and need not be pleaded in bar. It was incumbent on the state not only to prove that the appellant perpetrated the crime [which in Mead was grand larceny] but that he did so within two years of the filing of the information on which he was being tried... ."[11]
In the instant case, the trial judge found that the taking was complete when the six months ran during which the monies were to be turned over to Garrison. This finding is amply supported by Florida criminal law precedent. Exemplary of such precedent is Fitch v. State.[12] In Fitch, this Court stated that:
"Larceny at common law may be defined as the felonious taking and carrying away of the personal property of another, which the trespasser knows to belong to another, without the owner's consent, and with the intent permanently to deprive the owner of his property therein, and convert it to the use of the taker or of some person other than the owner."[13]
Thus, the crime of larceny was considered to be complete upon the taking. Or, in the words of the Court, "[t]he asportation may be completed by even the slightest removal of the thing stolen from its original position."[14]
The State contends that the instant case should be controlled by this Court's decision in State v. Pierce.[15] That decision, however, was specifically limited to the issue of larceny by an executor, and concerned Section 811.021(1)(c), Florida Statutes, F.S.A., which provided:
"While acting as executor, administrator, committee, guardian, receiver, collector or trustee of any description, appointed by a deed, will, or other instrument, or by an order or judgment of a court or officer, secretes, withholds or otherwise appropriates to his own use, or that of any person other than the true owner, or person entitled thereto, any money, personal property, goods and chattels, thing in action, evidence of debt, contract, property or article of value of any kind, in his possession or custody by virtue of his office, employment or appointment; steals such property, and is guilty of larceny."
Limiting its opinion to the foregoing portion of the statute, this Court held that the crime of larceny was not complete until an overt act of actually withholding probated monies from an estate after official, judicial demand was made.
By referring loosely to the respondent as "a fiduciary", the State has attempted to bring him into the same category as one who is appointed by a deed, will, or by order of a court. The cases that the State has used as authority are civil cases in which the issue was whether or not a man would be held civilly liable for damages for breaches of a trusting relationship. These cases do not, nor do any other Florida cases, establish an all-inclusive, informal relation wherever one man trusts in and relies upon another that would be accepted as a categorical fiduciary for the imposition of criminal sanctions. Certainly, under normal statutory construction, respondent's relationship with Wolfson could not be equated to that of a statutory fiduciary, especially for the imposition of criminal *166 sanctions. In fact, the general term "fiduciary" is not used in the statute under which respondent is charged  only those specifically designated in the strict wording of the statute could be fiduciaries for purposes of applying the larceny statute.
Except in the restricted category of judicially and statutorily created fiduciaries, the national weight of authority overwhelmingly supports the view that "the Statute of Limitations begins to run from the time of commission of an offense, or when the crime is complete, not the date the crime is discovered."[16]
As stated by the Supreme Court of the United States in Pendergast v. United States:[17]
"Statutes of limitations normally begin to run when the crime is complete. See United States v. Irvine, 98 U.S. 450, 25 L.Ed. 193. Every statute of limitations, of course, may permit a rogue to escape."[18]
Finally, we turn to Toussie v. United States,[19] the United States Supreme Court's most recent consideration of the matter of Statute of Limitations, and we find that the law is completely consistent with that which has been described above as prevalent in Florida and nationally. Toussie involved a failure to register for the draft, and although the government agreed that the crime of non-registration occurred in 1959 when the defendant reached draft age and did not register, it argued that it continued to be committed each day that non-registration occurred until it was brought to the attention of the Draft Board. The Court stated:
"In deciding when the statute of limitations begins to run in a given case several considerations guide our decision. The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity. For these reasons and others, we have stated before `the principle that criminal limitations statutes are "to be liberally interpreted in favor of repose," United States v. Scharton, 285 U.S. 518, 522, 52 S.Ct. 416, 417, 76 L.Ed. 917 (1932).' United States v. Habig, 390 U.S. 222, 227, 88 S.Ct. 926, 929, 19 L.Ed.2d 1055 (1968). We have also said that `statutes of limitations normally begin to run when the crime is complete' . .. These principles indicate that the doctrine of continuing offenses should be applied in only limited circumstances since ... `the tension between the purpose of a statute of limitations and the continuing offense doctrine is apparent; the latter, for all practical purposes, extends the statute beyond its stated term.' 410 F.2d [1156], at 1158. These considerations do not mean that a particular *167 offense should never be construed as a continuing one. They do, however, require that such a result should not be reached unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that the Congress must assuredly have intended that it be treated as a continuing one."[20]
The Court held that the legislature's silence in a statute is "stronger in favor of not construing this Act as incorporating a continuing-offense theory."[21] The Court concluded that when a statute of limitations bars a given prosecution, it must give effect to the clear expression of the legislative bill.
The Florida Statute of Limitations, like the federal one involved in Toussie, is completely silent on a concept of a continuing, discoverable offense. To create such an exception to the Statute of Limitations is to rewrite a plain and unambiguous statute. If this is a "loophole" that should be closed, we must turn to the legislature to do so. Until the statute is rewritten by the lawmakers, the Statute of Limitations in Florida criminal case runs from the date of the commission of the crime; and, in the case of a prosecution for larceny, the crime is complete  and committed  upon the taking.
Accordingly, the question certified to us by the District Court of Appeal, Third District, is answered as hereinabove set forth, and the decision of the District Court is affirmed.
It is so ordered.
CARLTON, C.J., and ERVIN, McCAIN and DEKLE, JJ., concur.
NOTES
[1] 275 So.2d at 275-276.
[2] 275 So.2d at 277.
[3] Case No. 72-368 (Fla.App.3d, Apr. 18, 1973).
[4] Section 932.465, Florida Statutes, F.S.A., 1971.
[5] 157 Fla. 121, 25 So.2d 73, 74 (1946).
[6] 153 Fla. 611, 15 So.2d 327 (1943).
[7] 15 So.2d at 328.
[8] 154 Fla. 730, 19 So.2d 106 (1944).
[9] 19 So.2d at 107-108.
[10] 101 So.2d 373 (Fla. 1958).
[11] Id. at 375. See also Weinert v. State, 35 Fla. 229, 17 So. 570 (1895); Warrace v. State, 27 Fla. 362, 8 So. 748 (1891); Nelson v. State, 17 Fla. 195 (1879).
[12] 135 Fla. 361, 185 So. 435 (1938).
[13] 185 So. at 437.
[14] Id.
[15] 201 So.2d 886 (Fla. 1967).
[16] 21 Am.Jur.2d Criminal Law § 157 (1965).
[17] 317 U.S. 412, 63 S.Ct. 268, 87 L.Ed. 368 (1942).
[18] Id. at 418, 63 S.Ct. at 271. See also Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957), in which the Court stated that the duration of a crime cannot be indefinitely lengthened merely because the crime itself is kept a secret, and merely because the criminal takes steps to bury his traces in order to avoid detection and punishment after the central criminal purpose has been accomplished.
[19] 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970).
[20] Id. at 114-115, 90 S.Ct. at 860.
[21] Id. at 120, 90 S.Ct. at 863.