# Supreme Court of Florida

_____

No. SC14-319
_____

**WILLIAM R. CREWS,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

[November 25, 2015]

CANADY, J.

In this case we are asked to decide a question of law which the First District

Court of Appeal certified to be of great public importance:

> DOES THE STATUTE OF LIMITATIONS FOR "MISCONDUCT
> IN OFFICE" BY A PUBLIC OFFICER OR EMPLOYEE IN
> SECTION 775.15(12)(b), FLORIDA STATUTES, APPLY TO A
> PUBLIC SCHOOL TEACHER?

Crews v. State, No. 1D12-4703 (Fla. 1st DCA Feb. 4, 2014). The district court

held that the statutory provision in question, which extends the statute of

limitations in certain circumstances, applied in this case and on that basis affirmed

Petitioner's convictions of several offenses. Crews v. State, 130 So. 3d 698 (Fla.

1st DCA 2013). Petitioner seeks review. We have jurisdiction. See art. V,

§ 3(b)(4), Fla. Const. In addition to considering Petitioner's claim that the district court erred in holding that the statute applies to public school teachers, we also consider his alternative argument that the statute in question is inapplicable in this case because the charged criminal conduct was not connected to the performance of his duties as a teacher. We hold that the statutory provision applies to public school teachers and that it applies in this case.

**FACTS**

In August 2012, the State filed an information against Petitioner, a public school teacher, charging him with sexual offenses against minors over the age of twelve, including eight counts charging second- or third-degree felonies alleged to have been committed between June 2001 and June 2006.[1] Ordinarily these charges would have been barred by the three-year statute of limitations applicable to second- and third-degree felonies. See § 775.15(2)(b), Fla. Stat. (2001).[2]

_____

1. The crimes involved in this review proceeding are three counts of lewd or lascivious molestation of a person over the age of twelve and under the age of sixteen in violation of section 800.04(5)(a), (c)2., Florida Statutes (2006); three counts of lewd or lascivious exhibition in the presence of a person under the age of sixteen in violation of section 800.04(7)(a), (c), Florida Statutes (2006); and two counts of showing obscene material to a minor in violation of section 847.0133, Florida Statutes (2005).

2. The statute of limitations that applies to a criminal charge is generally the one in effect at the time of the conduct giving rise to the charge. See State ex rel. Manucy v. Wadsworth, 293 So. 2d 345, 347 (Fla. 1974); Abdullah v. State, 883 So. 2d 843, 844 (Fla. 5th DCA 2004). Section 775.15(2), Florida Statutes (2001),

However, the State also charged that when he committed the offenses, Petitioner was a public employee and that by committing them, he engaged in "misconduct in office" under section 775.15(3)(b), Florida Statutes (2001).[3] Section 775.15(3)(b) extended the limitation period for offenses "based upon misconduct in office by a public officer or employee."[4]

---

which remained the same in substance throughout the period when the offenses were alleged to have taken place, provided as follows:

>    (2)  Except as otherwise provided in this section, prosecutions for other offenses are subject to the following periods of limitation:
>    (a)  A prosecution for a felony of the first degree must be commenced within 4 years after it is committed.
>    (b)  A prosecution for any other felony must be commenced within 3 years after it is committed.
>    (c)  A prosecution for a misdemeanor of the first degree must be commenced within 2 years after it is committed.
>    (d) A prosecution for a misdemeanor of the second degree or a noncriminal violation must be commenced within 1 year after it is committed.

3.  Section 775.15(3)(b) remained unchanged in substance throughout the period during which the offenses were alleged to have taken place, although it was readopted as section 775.15(12)(b), Florida Statutes, in 2005.  See ch. 2005-110, § 1, Laws of Fla.

4.  The relevant language of section 775.15(12)(b), Florida Statutes (2015), which in substance reads the same as the provision did at the time of the events in this case, provides as follows:

>    (12)  If the period prescribed in subsection (2) . . . has expired, a prosecution may nevertheless be commenced for:
>    . . . .
>    (b)  Any offense based upon misconduct in office by a public officer or employee at any time when the defendant is in public office or employment, within 2 years from the time he or she leaves public

Petitioner moved to dismiss all eight charges under Florida Rule of Criminal Procedure 3.190(c)(4), on the ground that the statute of limitations had expired and the provision that extended the limitation period did not apply. The bringing of charges within the limitation period is a factual matter which the State must prove just as it must prove all other elements of the offense. See Sturdivan v. State, 419 So. 2d 300, 301-02 (Fla. 1982); State v. King, 282 So. 2d 162 (Fla. 1973); Gray v. State, 803 So. 2d 755, 756 (Fla. 2d DCA 2001). A motion to dismiss under rule 3.190(c)(4) asserts that "[t]here are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt against the defendant." The purpose of a motion to dismiss under rule 3.190(c)(4) is to determine whether the facts which the State has alleged and upon which it will offer evidence show a prima facie case of guilt on the part of the defendant. See Styron v. State, 662 So. 2d 965, 966 (Fla. 1st DCA 1995).

The State filed traverses to the motions to dismiss. The State's traverses disputed Petitioner's claim that the undisputed facts showed that the statute of limitations had expired. The State's traverses disputed certain factual statements in Petitioner's motion and alleged additional facts supporting its position that the

---

office or employment, or during any time permitted by any other part of this section, whichever time is greater.

- 4 -

extension statute was applicable. These filings framed for the trial court's determination the issue of whether the State had established a prima facie case of guilt against the defendant. See, e.g., Dixon v. State, 112 So. 3d 721, 723 (Fla. 2d DCA 2013); State v. Yarn, 63 So. 3d 82, 85 (Fla. 2d DCA 2011). Finding that there were disputed facts or that the undisputed facts established a prima facie case of defendant's guilt, the trial court denied the motions to dismiss. Petitioner pleaded nolo contendere, reserving the right to appeal the denial of his motions to dismiss. The court adjudicated Petitioner guilty of the charged offenses. By pleading nolo contendere, Petitioner admitted the facts alleged in the information. See, e.g., Vernold v. State, 376 So. 2d 1166, 1167 (Fla. 1979). A defendant pleading nolo contendere can reserve only legal issues for appeal. See Falco v. State, 407 So. 2d 203, 206 (Fla. 1981). Whether a statute applies to a given set of facts is a legal issue. See Koile v. State, 934 So. 2d 1226, 1229 (Fla. 2006).

Thus the legal issue framed for appellate review was whether the statute of limitations' extension provision for "misconduct in office by a public officer or employee" was applicable in this case. The district court of appeal affirmed the convictions. Crews v. State, 130 So. 3d at 702. Then it certified the question set out above.

## ANALYSIS

### I.

First we address the certified question. The certified question asks whether a statute applies to a given set of facts. This is a question of law calling for de novo review. See Kephart v. Hadi, 932 So. 2d 1086, 1089 (Fla. 2006). The district court held that the offenses were "misconduct in office" and that the statute applied to Petitioner because he was a public school teacher. Petitioner argues that the statutory language is ambiguous and in need of judicial construction to ascertain its meaning. Petitioner argues that we should look to the rules of statutory construction and that applying the appropriate rules of construction leads to the conclusion that the statute does not apply to public school teachers. The State responds that the language of the statute is clear and therefore no resort to rules of construction is necessary. If the language requires interpretation to determine its intended meaning, the State argues, applying the rules of construction leads to the conclusion that the statute is intended to apply to public school teachers.

The object of statutory interpretation is to determine legislative intent. See, e.g., Raymond James Fin. Servs. v. Phillips, 126 So. 3d 186 (Fla. 2013); Larimore v. State, 2 So. 3d 101, 106 (Fla. 2008); Kasischke v. State, 991 So. 2d 803 (Fla. 2008). We look first to the words of the statute to determine legislative intent. See, e.g., Kephart, 932 So. 2d at 1091; Zuckerman v. Alter, 615 So. 2d 661, 663

- 6 -

(Fla. 1993); S.R.G. Corp. v. Dep't of Revenue, 365 So. 2d 687, 689 (Fla. 1978). "[W]ords of common usage, when used in a statute, should be construed in their plain and ordinary sense." Pedersen v. Green, 105 So. 2d 1, 4 (Fla. 1958).

The relevant language of section 775.15(12)(b), Florida Statutes (2015), provides:

> (12) If the period prescribed in subsection (2) . . . has expired, a prosecution may nevertheless be commenced for:
> . . . .
> (b) Any offense based upon misconduct in office by a public officer or employee at any time when the defendant is in public office or employment, within 2 years from the time he or she leaves public office or employment, or during any time permitted by any other part of this section, whichever time is greater.

(Emphasis added.) The certified question asks us to determine whether this statute applies to public school teachers. In LaMorte v. State, 984 So. 2d 548 (Fla. 2d DCA 2008), a public school teacher was charged with several offenses and the charging document included the allegation that the offenses constituted misconduct in office by a public employee. The defendant moved to dismiss for expiration of the statute of limitations. When his motion to dismiss was denied, defendant pled nolo contendere and was convicted. On appeal he argued that the limitation extension statute applied only to persons holding public office and was therefore inapplicable. The district court found that the words "public officer or employee" were clear in meaning. Id. at 552. The court held that the extension statute applied

- 7 -

to public employees as well to public officers and that it applied to public school teachers.  Id. at 550, 552-53.

To support his contention that the meaning of the provision is unclear, Petitioner suggests that the words "misconduct in office," when juxtaposed with the words "public office or employment" are discordant because of the inference that to commit "misconduct in office," one needs to hold or be in a "public office." Petitioner argues that this creates an ambiguity and that under the rule of lenity,[5] an ambiguity in a criminal statute must be resolved in favor of the defendant.

Petitioner points out that in the public education statutes, teachers are not defined as "employees" but as "instructional personnel."[6]  Relying on the canon of statutory construction in pari materia,[7] i.e., that statutes on the same subject matter should be read together, he argues that the limitation extension statute should be construed in light of the definitions found in the education statute, under which, according to the argument, a public school teacher would not be considered a

---

5. See § 775.021(1), Fla. Stat. (2015) ("The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.").

6. § 1012.01(2), Fla. Stat. (2006).

7. In pari materia means on or relating to the same subject matter.  Black's Law Dictionary 911 (10th ed. 2014).  This canon of construction provides that statutes on the same subject matter may be construed in light of each other.  See id.

public employee. For further support of this argument, Petitioner relies on the canon of construction expressio unius est exclusio alterius,[8] the rule that in a statute, the inclusion of one thing indicates the exclusion of others. The argument is that the Legislature's choice to include classroom teachers within the defined category of "instructional personnel" in the public education statute indicates an intent to exclude public school teachers from the reference to "public officer or employee" in section 775.15(12)(b).

The rule of lenity, as expressed in section 775.021(1), applies when a statute is "susceptible of differing constructions." The requirement to construe the language most favorably to the accused applies when the posited differing constructions are reasonable. See, e.g., Polite v. State, 973 So. 2d 1107, 1111 (Fla. 2007); State v. Williams, 776 So. 2d 1066, 1070 (Fla. 4th DCA 2001); see also 2A Norman J. Singer & Shambie Singer, Statutes and Statutory Construction § 45.2 (7th ed. 2014) ("[A]mbiguity exists when a statute is capable of being understood by reasonably well-informed persons in two or more different senses."); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 425 (2012) ("[A]mbiguity [is] [a]n uncertainty of meaning based not on the scope of a

---

8. "A canon of construction holding that to express or include one thing implies the exclusion of the other, or of the alternative." Black's Law Dictionary 701 (10th ed. 2014).

word or phrase but on a semantic dichotomy that gives rise to any of two or more quite different but almost equally plausible interpretations."). The statutory definition of teachers as "instructional personnel" applies in the context of public school personnel management and is not in pari materia with section 775.15(12)(b). We understand the term "public employee" in its plain and ordinary sense to include public school teachers. This plain-language interpretation is consistent with the understanding reflected in other sources of law. See § 447.203(2)-(3), Fla. Stat. (2006) (providing with exceptions that a person employed by a public employer is a public employee and that a district school board is a public employer); see also Dade Cnty. Classroom Teachers' Ass'n v. Ryan, 225 So. 2d 903, 904 (Fla. 1969) (holding that public school teachers had collective bargaining rights as public employees under article I, section 6, Florida Constitution). We therefore reject the suggestion that public school teachers are not meant to be included within the statutory reference to "a public . . . employee."

As stated above, Petitioner argues there is an incongruity in the statute based on the use of the phrase "misconduct in office" followed by the terms "public officer or employee." He submits that a useful analysis is found in the dissenting opinion of Judge Altenbernd in LaMorte. Judge Altenbernd found the phrase "misconduct in office" ambiguous, requiring a construction in favor of the defendant under the rule of lenity, and concluded that the statute should apply only

to persons holding "office" as defined by the constitution or by statute. <u>LaMorte</u>, 984 So. 2d at 553-54 (Altenbernd, J., dissenting). Because of this purported ambiguity, Petitioner submits that the statute should be given a limiting construction based on the State's experience with the predecessor version of the statute.

Prior to its amendment in 1974, section 932.465(3), Florida Statutes (1973), provided as follows:

> (3) Offenses by state, county, or municipal officials committed during their terms of office and connected with the duties of their office shall be commenced within two years after the officer retires from the office.

Chapter 74-383, section 10, Laws of Florida, revised this provision and adopted it in amended form as section 775.15(3)(b), Florida Statutes, reading as follows:

> (3) If the period described in subsection (2) has expired, a prosecution may nevertheless be commenced for:
> . . . .
> (b) Any offense <u>based on misconduct in office by a public officer or employee</u> at any time when the defendant is in public office or employment or within two years from the time he leaves public office or employment or during any time permitted by any other part of this section, whichever time is greater.

(Emphasis added.) Thus the reference to "state, county, or municipal officials" was changed to refer to "a public officer or employee," and the phrase "connected with the duties of their office" was changed to read "based on misconduct in office."

- 11 -

Before the 1974 amendment, this Court discussed a possible rationale for the predecessor statute, which was described as the supposition that "officers can and frequently do so completely conceal their embezzlements that their crimes are not detected until their official records pass into the hands of their successors." State v. Bruno, 107 So. 2d 9, 12 (Fla. 1958) (quoting State v. Douglass, 144 S.W. 407, 408 (Mo. 1912)). In light of this rationale, Petitioner argues that the inclusion of the word "employee" in the statute was not intended merely to expand the statute to cover all public employees but had a more limited purpose. Petitioner argues that by adding "employee" in the 1974 revision, the Legislature intended to expand the class of persons covered by the extension provision to include, in addition to public officials, public employees who exercised the power of a public office in place of a public officer by delegation of authority. He argues that since public school teachers do not hold "office" or exercise public authority in place of a public officer, the statute was not intended to apply to them. To support this argument, Petitioner cites cases showing that before the 1974 amendment, there were disputes over whether the extension statute applied to high-ranking local government employees who claimed not to be public officials. See State v. Glidewell, 311 So. 2d 126 (Fla. 2d DCA 1975) (holding city manager was a municipal official despite not having fixed term of office); State v. Clyde, 299 So. 2d 136 (Fla. 1974) (holding that circuit court sitting in appellate capacity had

inadequate basis to determine that county building maintenance superintendent was not a county official). Thus the purpose of the revision, in Petitioner's view, was to include employees such as city managers and county building superintendents within the reach of the statute. In response, the State argues that the Legislature's adding the word "employee" shows a clear intent to expand the scope of the statute to include all public employees.

When a statute is amended in some material way, courts presume that the legislature intended the amendment to have substantive effect. See, e.g., Rich v. Kaiser Gypsum Co., 103 So. 3d 903, 906 (Fla. 4th DCA 2012); Gunite Works, Inc. v. Lovett, 392 So. 2d 910, 910 (Fla. 1st DCA 1980). Before the amendment, the extension statute by its terms applied to "[o]ffenses by state, county, or municipal officials . . . connected with the duties of their office." § 932.465(3), Fla. Stat. (1973). The 1974 amendment made the extension provision applicable to "[a]ny offense based on misconduct in office by a public officer or employee." We agree that the changes made to the statute in 1974 were intended to expand the reach of the statute, but not in the limited way suggested by Petitioner. Petitioner's argument that the words "public officer or employee" were intended to cover public officials and employees who act in the place of a public official under delegated authority is based on sheer speculation. If the Legislature had intended such a meaning, it could easily have made such intention clear. The amendment

used the words "public officer or employee" in place of the former term "state, county, or municipal officials." Every word in a statute should be given effect, and constructions should be avoided that would render any words superfluous. See, e.g., Larimore, 2 So. 3d at 106; State v. Bodden, 877 So. 2d 680, 686 (Fla. 2004). We agree with the First District below and the Second District in LaMorte that on their face the statutory words show a legislative intent to cover public employees and that public school teachers are included. That the Legislature intended for the statute to apply to public employees, including public school teachers, is the only reasonable interpretation.

We do not agree that the words "public office" should be read to limit the meaning of the phrase "misconduct in office." It is plain that the Legislature, in referring to "a public officer or employee," meant to refer to two different classes of persons, "public officers" and "public employees." No words should be treated as redundant or useless. However, it does not follow that "misconduct in office" can only be committed by a public officer. The word "office," as used in the phrase "misconduct in office," has a broader meaning than the sense it expresses when used in the expression "public office." When construing words "in their plain and ordinary sense," Pedersen, 105 So. 2d at 4, use of a dictionary is permissible. See, e.g., Green v. State, 604 So. 2d 471, 473 (Fla. 1992). "Office" is defined as follows: "A position or place to which certain duties are attached, esp.

- 14 -

one of a more or less public character; a position of trust, authority, or service under constituted authority; a place in the administration of government, the public service, the direction of a corporation, company, society, etc." 10 Oxford English Dictionary 729 (2d ed. 1989).[9] Thus an "office" can be any position of trust or responsibility and is not limited to the sense of a position invested with government decision-making power. We have no difficulty concluding that the phrase "based on misconduct in office" applies to public employees as well as to public officers. A public school teacher occupies a position of trust and responsibility under the authority of state and local government and in that sense the position is an "office." See also § 421.06, Fla. Stat. (2015) (providing that the failure of a local housing authority employee to disclose an ownership interest in property included in a public housing project is "misconduct in office").[10]

---

9. See also Webster's Third New International Dictionary 1567 (1981 ed.) (defining "office" as "a special duty, charge, or position conferred by an exercise of governmental authority and for a public purpose: a position of authority to exercise a public function and to receive whatever emoluments may belong to it").

10. Other statutory definitions of and references to the terms "public official," "public officer," "public employee," and "public servant" are unhelpful because either by their express terms or based on the context they are of limited application. See, e.g., § 1.01(6), Fla. Stat. (2015) (references to "office or officer" includes persons authorized to perform duties of the office); § 22.03(3) ("office" includes state and local offices with duties defined by law); § 97.021(31) ("public office" defined for purposes of the election code); § 110.107(5) (defining "position" as used in chapter on public officers and employees); § 111.012(1)(b) (defining "elected public officer" for purposes of section); § 112.313(1) (defining "public officer" for purposes of section); § 112.3135(1)(c) (defining "public

- 15 -

As was mentioned above, Petitioner finds support for his ambiguity argument in the dissenting views of Judge Altenbernd in <u>LaMorte</u>, who found the phrase "misconduct in office" ambiguous, requiring a construction in favor of the defendant under the rule of lenity, and concluded that the statute should only apply to persons holding "public office" as defined by the constitution or by statute. <u>LaMorte</u>, 984 So. 2d at 553-54 (Altenbernd, J., dissenting). Applying the statute more broadly than this would mean that any public employee committing an offense connected to his or her employment would be subject to having the limitation period extended by many years—perhaps for an entire career in public employment—which, in Judge Altenbernd's view, would be an incongruous result. The very incongruity of such a result demonstrated for him the ambiguity of the statute and thereby created uncertainty as to legislative intent.

Petitioner also directs our attention to (and urges upon us as a persuasive analysis) the dissenting opinion filed in the lower court by Judge Padovano, who reasoned as follows:

> We do not know whether the legislature meant to use the phrase in a broad sense to refer to any government employee, or in a narrow

official" for purposes of section); § 112.3142(1) (defining "constitutional officers" for purposes of section); § 112.49 (person exercising powers of county officer under city-county charter is a county officer subject to governor's suspension power); § 838.014(6) (defining "public servant" to include state, county, municipal, special district, legislative, or judicial officer or employee for purposes of chapter).

- 16 -

sense to include only those employees who hold an "office" as defined in the state constitution or the state laws. The narrow construction makes more sense to me as I do not think there is any valid reason to treat public employees differently from private employees.

At the very least, the statute is ambiguous, and I would resolve the ambiguity in favor of the defendant pursuant to the rule of lenity.

Crews, 130 So. 3d at 702 (Padovano, J., concurring in part and dissenting in part). These dissenting opinions are in essence disagreements with the policy choice made by the Legislature.

The purpose of a statute of limitations is to avoid delays in prosecution that might hamper the defense because evidence has been lost and witnesses have become unavailable. See, e.g., Young v. State, 784 So. 2d 1249, 1251 (Fla. 1st DCA 2001); State v. Hickman, 189 So. 2d 254, 261 (Fla. 2d DCA 1966). Under the common law, there were no time limits on criminal prosecutions. See State v. McCloud, 67 So. 2d 242, 244 (Fla. 1953). Statutes of limitation are entirely discretionary acts of legislative grace. See Hickman, 189 So. 2d at 262. In State v. Bruno, 107 So. 2d 9 (Fla. 1958), a municipal officer was charged with grand larceny and moved to dismiss the charge for expiration of the statute of limitations. The case involved the application of section 932.06, Florida Statutes, the predecessor of section 775.15(12)(b), which extended the limitation period until two years after the end of the defendant's term of office. The Court held that the statute served a valid purpose and discussed authorities indicating that the purpose

of such a statute is to avoid the situation whereby "officers can and frequently do so completely conceal their embezzlements that their crimes are not detected until their official records pass into the hands of their successors." Bruno, 107 So. 2d at 12 (quoting Douglass, 144 S.W. at 408). The appellant argued that his offense did not come within the intent of the statute because there was no attempt to conceal the crime and the crime "did not consist of any act which could be covered up by the official's control of his office." Id. at 13. The Court rejected the argument because the statute itself did not provide any "distinction on this ground." Id. The appellant also raised as an issue the fact "that one who held public office for forty years could be charged almost forty two years later for an offense committed in the first year of his tenure." Id. The Court disposed of this issue as follows: "It being clear that the Legislature had the right to enact the statute, we will not concern ourselves with its wisdom in doing so." Id. As we held in Bruno, the policy issue involved in the present case—whether it makes good sense to extend the limitation period so substantially—is for the Legislature to determine.

We answer the certified question in the affirmative and hold that section 775.15(12)(b), Florida Statutes, applies to public school teachers.

## II.

Petitioner's second argument is that the statute of limitations extension provision is inapplicable in this case because the acts on which the criminal charges were based did not constitute "misconduct in office." The issue being one of applying a statute to a given set of facts, the standard of review is de novo. See, e.g., B.Y. v. Dep't of Children & Families, 887 So. 2d 1253, 1255 (Fla. 2004).

By pleading nolo contendere, the defendant admitted the facts alleged in the information, reserving only his legal claim that the admitted facts did not bring the case within the extension provision for offenses based on misconduct in office by a public officer or employee. The issue before the trial court was whether the allegations of the information, the statements in the State's traverses, and the record documents cited in support of them, viewed in the light most favorable to the State, were sufficient to establish a prima facie case of the defendant's guilt, including the fact that the charges were brought within the applicable statute of limitations period as measured from the time of the acts forming the basis for the criminal charges. The trial court found that a prima facie case was established and denied the motions to dismiss, following which Petitioner submitted his nolo pleas and the court adjudicated him guilty. As stated above, the district court of appeal affirmed, holding that section 775.15(12)(b) applied to the offenses in this case on the authority of LaMorte.

- 19 -

Petitioner argues that the term "misconduct in office" requires that there be a connection between the offenses charged and the defendant's function or duties as a public employee and that the defendant's mere status as a public employee is not enough to bring the charges within the extension statute. We need not analyze Petitioner's arguments with respect to statutory interpretation on this point because the State agrees that there must be a connection and we hold there must be a connection based on the plain language of the statute.

Petitioner argues that in order for there to be a sufficient connection between the acts complained of and his duties as a teacher, the acts are required to have been committed on school grounds or in connection with school activities.[11] We do not agree. The record shows that Respondent became acquainted with and befriended the minor victims of the crimes through his role as their teacher. The victims were seventh-, eighth-, and ninth-grade students. Petitioner was active in sponsoring student activities and cultivated relationships with the students by such actions as helping with school projects and counseling them about doing well in

---

11. Although the context is different, the conduct of a public school teacher that takes place off of school grounds, outside of school hours, and unconnected with school activities can provide the basis for a finding of "misconduct in office" for purposes of disciplinary action against a public school teacher. See Purvis v. Marion Cnty. Sch. Bd., 766 So. 2d 492, 498-99 (Fla. 5th DCA 2000) (upholding teacher's firing for "misconduct in office" under administrative rules governing teacher conduct and discipline).

school. His role as their teacher enabled him to gain the trust of his victims. The victims looked upon him as a person in a position of authority and for that reason a trustworthy person. The evidence shows that most of the criminal acts took place at a storage unit which Petitioner had furnished as a living space and where he kept a television with a DVD player. Petitioner would invite the students to go out to eat or to car exhibitions and then invite them to the storage unit where he would show them pornographic videos and eventually persuaded them to allow him to perform acts of lewd or lascivious exhibition and molestation.

Petitioner arranged for one of his victims to accompany him to a private health club a number of times. Sometimes Petitioner took the student there during school hours. At least one act of lewd or lascivious exhibition and one act of lewd or lascivious molestation took place at the health club. One of the instances of Petitioner showing a student obscene material took place in a hotel room on a school-sponsored trip. However, we do not agree with Petitioner's argument that in order to constitute "misconduct in office" the actions must take place on school grounds or during school activities.

By means of his role as their teacher, Petitioner gained the opportunity to invite the students to accompany him to events and activities off the school grounds, and ultimately to take them to the storage unit, the health club, or to his home, where the offenses took place. Having used his position as a teacher to

cultivate friendly relationships with the students, he was able to persuade them to engage in the prohibited acts. His authority as their teacher was a significant factor in his being able to persuade them to engage in the various acts that formed the basis for the criminal charges. The record establishes a connection between Petitioner's duties as a teacher and the criminal offenses. Therefore, the offenses were properly regarded as "misconduct in office," and the statute of limitations extension provision was properly applied in this case.

## CONCLUSION

We answer the certified question in the affirmative and approve the decision of the district court of appeal.

It is so ordered.

LABARGA, C.J., and LEWIS, QUINCE, and POLSTON, JJ., concur.
PARIENTE, J., dissents with an opinion, in which PERRY, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

PARIENTE, J., dissenting.

Under the guise of a "plain language" analysis, the majority has concluded that the statutory phrase "misconduct in office" in section 775.15(12)(b), Florida Statutes (2015), actually means misconduct in "employment." The majority's interpretation extends the statute of limitations for all public employees, for any crime connected with their employment and committed during their employment,

- 22 -

until two years after the employee leaves public employment—even though the employee holds no "office" defined by Florida law.

I respectfully dissent from the majority's statutory interpretation, which it presents as a "plain language" approach to avoid application of the rule of lenity to resolve this statutory ambiguity in favor of the reasonable interpretation benefitting the criminal defendant. See Kasischke v. State, 991 So. 2d 803, 814 (Fla. 2008). I would, instead, answer the certified question in the negative and adopt the well-reasoned opinion of Judge Altenbernd in LaMorte v. State, 984 So. 2d 548, 553 (Fla. 2d DCA 2008) (Altenbernd, J., dissenting), which was echoed by Judge Padovano in his separate opinion below. See Crews v. State, 130 So. 3d 698, 702 (Fla. 1st DCA 2013) (Padovano, J., concurring in part and dissenting in part).

As Judge Altenbernd explained in LaMorte, the construction of the statute embraced by the majority results in "holding that all state employees whose employment is governed by an employment agreement that allows the employer to terminate or reprimand them for 'misconduct in office' as a matter of civil employment law are subject to a special statute of limitations for criminal offenses committed in connection with that employment." 984 So. 2d at 553-54 (Altenbernd, J., dissenting). Just as Judge Altenbernd stated, "I cannot agree that an undefined reference to 'misconduct in office' puts public employees on notice of the extended statute of limitations applicable to them." Id. at 554.

Just to be clear, the issue is not whether the statute of limitations should be extended for crimes of sexual abuse committed against a minor victim. In fact, an extended statute of limitations already exists for certain criminal sexual offenses committed against minors, extending into the victim's age of majority in some circumstances or even, in others, indefinitely. See § 775.15(13)(a)-(c), (14)(a)-(b), Fla. Stat. (2015).[12] Rather, the issue is whether the statute of limitations should be extended for all criminal offenses connected with an individual's public employment, solely by virtue of the individual's status as a public employee.

Even if the majority's interpretation of the statute is a reasonable one, it certainly is not "plain." And even if the majority's interpretation is reasonable, it certainly is not the only reasonable interpretation of the statute.

Under the majority's analysis, the Legislature's 1974 amendment of the statute to include a public "employee," as well as a public "official," connotes an expansion from a limited group of individuals who were previously subject to the

---

12. Crews was charged with, among other offenses, second- and third-degree felonies of lewd or lascivious molestation, lewd or lascivious exhibition, and showing obscene material to a minor. As the majority opinion notes, second- and third-degree felonies are ordinarily subject to a three-year statute of limitations under section 775.15(2)(b), Florida Statutes. None of these charged offenses occurred later than June 2006, and the State did not commence prosecution until an information was first filed in March 2012. It is not readily apparent from the record why the extended statute of limitations applicable to certain criminal sexual offenses committed against minors did not permit the State to file these charges, although it is possible that even that extended limitations period had expired for these particular offenses by the time the State commenced prosecution.

extended statute of limitations to <u>every</u> public employee. But there is not a word of explanation in the legislative history about this unprecedented expansion, which the majority claims was clearly intended.

If the Legislature's intent was really as clear as the majority asserts, there would be no need for the majority to rely on pre-amendment history, as the majority does. In fact, as this Court has previously noted, pre-amendment history is a tool of statutory construction—not simply an application of a "plain language" analysis. <u>See</u> <u>N. Carillon, LLC v. CRC 603, LLC</u>, 135 So. 3d 274, 277-78 (Fla. 2014) (turning to statutory history "to resolve an ambiguity in the statutory text," after determining that the plain meaning rule was not dispositive); <u>see also</u> <u>State v. Hackley</u>, 95 So. 3d 92, 93 (Fla. 2012) ("[I]f the meaning of the statute is clear and unambiguous, we look no further.").

At the same time, while it is actually engaging in statutory construction to determine legislative intent, the majority pronounces that "misconduct in <u>office</u>" is synonymous with misconduct in "<u>employment</u>" and states that the text of the statute plainly says so. <u>See</u> majority op. at 14-15 (emphasis added). This interpretation ignores the "well-established tenet of statutory construction that courts 'are not at liberty to add words to the statute that were not placed there by the Legislature.' " <u>Lawnwood Med. Ctr., Inc. v. Seeger</u>, 990 So. 2d 503, 512 (Fla. 2008) (quoting <u>State v. J.M.</u>, 824 So. 2d 105, 111 (Fla. 2002)).

- 25 -

Importantly, "office" and "employment" do not mean the same thing. A reasonable interpretation of the phrase "misconduct in office by a public officer or employee" is that the reach of the statutory text is limited to those employees who hold an official position or public office defined by Florida law. After all, it is certainly reasonable to conclude that an individual cannot commit misconduct "in office" if the individual does not possess any "office." The majority's contrary interpretation that "office" in this context means "any position of trust or responsibility"—and, apparently, that all public employees are encompassed under this definition—is not "plain" from the statutory text. See majority op. at 14-15.

School teachers do not hold any "office" as defined in the Florida Constitution or the Florida Statutes. See § 1.01(6), Fla. Stat. (2015) ("Reference to any office or officer [in the Florida Statutes] includes any person authorized by law to perform the duties of such office."). As Judge Padovano observed, "We do not know whether the legislature meant to use the phrase [misconduct in office] in a broad sense to refer to any government employee, or in a narrow sense to include only those employees who hold an 'office' as defined in the state constitution or the state laws." Crews, 130 So. 3d at 702 (Padovano, J., concurring in part and dissenting in part). At a minimum, the narrower interpretation is a reasonable one, thus implicating our duty to apply rules of statutory construction and in particular the rule of lenity, which in Florida is more than "just an interpretive tool" but is in

fact "a statutory directive." Kasischke, 991 So. 2d at 814 (citing section 775.021(1), Florida Statutes).

The disparity explained by Judges Altenbernd and Padovano is not simply a policy disagreement, as the majority erroneously contends, but an expression directly related to the judiciary's role to determine legislative intent—that is, that the Legislature would not have drastically extended the statute of limitations to all public employees simply by using the phrase "misconduct in office":

> I am troubled by the disparity created by the majority's holding between the treatment of state employees and the treatment of private employees. For example, a private school teacher who steals a $500 piece of equipment is subject to a three-year statute of limitations, see § 775.15(2)(b), Fla. Stat. (2007), while a public school teacher, or perhaps even a janitor, who commits the same act is subject to a statute of limitations that may not expire for thirty years. See § 775.15(12)(b). The teacher involved in this case has a limitations period in excess of twenty years for offenses that would have been barred after three years if he worked for a church or private school. I am not arguing that this statute of limitations violates equal protection; I simply believe this incongruity demonstrates the ambiguity that should require this court to narrowly construe this special statute of limitations.

LaMorte, 984 So. 2d at 554 (Altenbernd, J., dissenting).

In short, I would conclude that the Legislature's use of the phrase "misconduct in office" is not clear and unambiguous but is instead subject to two reasonable interpretations. As required by generally accepted principles of statutory construction and by the rule of lenity set forth in section 775.021(1), I would interpret the statute in the light most favorable to the defendant.

Accordingly, I dissent from the majority's statutory construction analysis and would answer the certified question in the negative.

PERRY, J., concurs.

Application for Review of the Decision of the District Court of Appeal - Certified Great Public Importance

First District - Case No. 1D12-4703

(Bay County)

Nancy Ann Daniels, Public Defender, and Glen Phillip Gifford, Assistant Public Defender, Second Judicial Circuit, Tallahassee, Florida,

for Petitioner

Pamela Jo Bondi, Attorney General, Trisha Meggs Pate, Bureau Chief, Jennifer Johnson Moore, Assistant Attorney General, Donna Antoinette Gerace, Assistant Attorney General, and Justin Derek Chapman, Assistant Attorney General, Tallahassee, Florida,

for Respondent

Pamela Langston Cooper, General Counsel, and William Alexander Spillias, Assistant Director of Legal Services, Florida Education Association, Tallahassee, Florida,

for Amicus Curiae Florida Education Association