FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D17-4169

_____

CHARLES VANSMITH,

Petitioner,

v.

STATE OF FLORIDA,

Respondent.

_____

Petition for Writ of Certiorari — Original Jurisdiction.

May 10, 2018

ROBERTS, J.

The petitioner, Charles Vansmith, petitions this Court for a writ of certiorari. The petitioner argues that the trial court departed from the essential elements of law by using section 775.021(4)(a), Florida Statutes (2017), to determine that it still had jurisdiction to keep him placed in a secure residential facility based on section 916.303(3), Florida Statutes (2017). We find that the trial court did not depart from the essential elements of law and deny the petition.

On June 5, 1996, the State charged the petitioner with having committed two counts of lewd and lascivious acts in the presence of a child on March 4, 1996. On July 17, 1996, the petitioner was adjudged incompetent to proceed due to an intellectual disability. On January 5, 2005, the petitioner was committed to a secure

residential facility, and the criminal charges against him were dropped. At some point, the petitioner filed a motion with the trial court to terminate jurisdiction. The petitioner argued that each of his prior charges had a maximum sentence of fifteen years in prison and he had been placed in a secure residential facility for more than fifteen years. The petitioner argued that the trial court only had jurisdiction for fifteen years based on section 916.303(3). The trial court denied the motion finding that it had jurisdiction for thirty years based on the court's ability to structure sentences consecutively in accordance with section 775.021(4)(a), which prompted the petitioner to file the instant petition for writ of certiorari.

Certiorari is generally the proper procedural mechanism for seeking review of an order that involuntarily commits a person. *Dep't of Children & Families v. Ramos*, 82 So. 3d 1121, 1122 (Fla. 2d DCA 2012); *Woods v. State*, 969 So. 2d 408, 409 (Fla. 1st DCA 2007). Certiorari review is only available when the petitioner shows that the order under review (1) constitutes a departure from the essential elements of law and (2) results in a material injury for the remainder of the case, and (3) the harm cannot be remedied on appeal. *City of Freeport v. Beach Cmty. Bank*, 108 So. 3d 684, 687 (Fla. 1st DCA 2013). The second and third prongs are what provide this Court with jurisdiction, so those elements must be analyzed first. *Id.*

Because the petitioner's liberty interests are at stake, this Court has jurisdiction. Certiorari jurisdiction also lies when a petitioner alleges that a trial court has acted in excess of its jurisdiction. *Dep't of Children & Families v. Carmona*, 159 So. 3d 165, 166 (Fla. 2d DCA 2015).

The petitioner's argument is predicated on the language contained in section 916.303(3). When interpreting statutes, courts focus on legislative intent. *Crews v. State*, 183 So. 3d 329, 332 (Fla. 2015). To discern legislative intent, a court first applies the plain and obvious meaning of the statutory text. *Id.* If the language provides a clear and unambiguous meaning, then the court will apply that meaning without resorting to the rules of statutory construction. *Gaulden v. State*, 195 So. 3d 1123, 1125 (Fla. 2016). An ambiguity exists when reasonable people can find different

meanings in the same language. *Fla. Dep't of Transp. v. Clipper Bay Invs., LLC*, 160 So. 3d 858, 862 (Fla. 2015). When there is an ambiguity, a court may look to the cannons of statutory interpretation and construction. *Anderson v. State*, 87 So. 3d 774, 777 (Fla. 2012).

Section 916.303(3), states in relevant part:

A defendant's placement in a secure facility may not exceed the maximum sentence for the crime for which the defendant was charged.

The phrase "maximum sentence" is not defined in chapter 916. The phrase "maximum sentence" also means "maximum sentences" based on section 1.01(1), Florida Statutes (2017). Based on the plain language of the relevant portion of section 916.303(3), one could interpret the phrase "maximum sentence(s)" in two different ways. One interpretation is the maximum sentence a defendant could receive for each individual crime charged, and the other interpretation is the maximum allowable sentence based on a trial court's sentencing structure. Since the relevant portion of section 916.303(3) is ambiguous, this Court resorts to the rules of statutory interpretation and construction.

The legislative intent for chapter 916 is stated in section 916.105, Florida Statutes (2017). The language contained in this section has remained relatively unchanged since it was enacted, with the exception of the enactment of subsection (4), which was added in 2006. *See* § 916.105, Fla. Stat. (1985-2017). Based on the stated legislative intent, it appears the Legislature was attempting to balance the rights and needs of the individuals with the need to protect society. The Legislature found the need to protect society so important that it made an escape or an attempted escape from a secure facility a second-degree felony when it enacted this section. *See* § 916.175, Fla. Stat. (1985). In 2006, the Legislature amended section 916.175 to require any punishment that was imposed for an escape or attempted escape to run consecutively to any former sentence that had been imposed. *See* § 916.1081(2), Fla. Stat. (2006-2017).

A well-known rule of statutory construction is that the Legislature is presumed to know the statutes that are in existence

3

at the time it enacts new legislation. *Barnett v. Dep't of Mgmt. Servs.*, 931 So. 2d 121, 132 (Fla. 1st DCA 2006). The Legislature enacted the relevant statutory language in 1983 in section 916.13(3). When the new language was added, it read:

> In no case may a client's placement in a secure facility pursuant to this part exceed the maximum sentence for the crime for which he was charged.

At the time, the Legislature enacted the above language in section 916.13(3), trial courts had been authorized to structure sentences consecutively under section 775.021(4) for seven years, *see* section 775.021(4), Florida Statutes (1976), and singular versions of words included the plural versions of words for decades, *see* section 1.01, Florida Statutes (1941). Because sections 775.021(4) and 1.01(1) had been in existence before the Legislature enacted the statutory language at issue, the Legislature is presumed to have known that a trial court could determine that it had jurisdiction for an extended period of time based on a consecutive sentencing structure.

The petitioner urges us to apply the rule of lenity, which is codified in section 775.021(1). The rule of lenity is a canon of last resort that requires any ambiguity in the statute to be resolved in favor of a defendant. *Kasischke v. State*, 991 So. 2d 803, 814 (Fla. 2008).

The rule of lenity applies to statutes that criminalize or penalize criminal behavior. *Albernaz v. United States*, 450 U.S. 333, 342 (1981). Section 916.303 states:

> (1) The charges against any defendant found to be incompetent to proceed due to intellectual disability or autism shall be dismissed without prejudice to the state if the defendant remains incompetent to proceed within a reasonable time after such determination, not to exceed 2 years, unless the court in its order specifies its reasons for believing that the defendant will become competent to proceed within the foreseeable future and specifies the time within which the defendant is expected to become competent to proceed. The charges may be refiled by the

4

state if the defendant is declared competent to proceed in the future.

(2) If the charges are dismissed and if the defendant is considered to lack sufficient capacity to give express and informed consent to a voluntary application for services and lacks the basic survival and self-care skills to provide for his or her well-being or is likely to physically injure himself or herself or others if allowed to remain at liberty, the agency, the state attorney, or the defendant's attorney shall apply to the committing court to involuntarily admit the defendant to residential services pursuant to s. 393.11.

(3) If the defendant is considered to need involuntary residential services for reasons described in subsection (2) and, further, there is a substantial likelihood that the defendant will injure another person or continues to present a danger of escape, and all available less restrictive alternatives, including services in community residential facilities or other community settings, which would offer an opportunity for improvement of the condition have been judged to be inappropriate, the agency, the state attorney, or the defendant's counsel may request the committing court to continue the defendant's placement in a secure facility pursuant to this part. Any placement so continued must be reviewed by the court at least annually at a hearing. The annual review and hearing must determine whether the defendant continues to meet the criteria described in this subsection and, if so, whether the defendant still requires involuntary placement in a secure facility and whether the defendant is receiving adequate care, treatment, habilitation, and rehabilitation, including psychotropic medication and behavioral programming. Notice of the annual review and review hearing shall be given to the state attorney and the defendant's attorney. A defendant's placement in a secure facility may not exceed the maximum sentence for the crime for which the defendant was charged.

5

Based on the plain language contained in section 916.303, the statute does not criminalize behavior. The petitioner has argued that it punishes him because his liberty has been taken away. Section 916.303(1) specifically allows charges to be reinstated if the petitioner becomes competent. If section 916.303 punishes criminal behavior, then the reinstatement of charges at a later date would be a violation of the principles against double jeopardy. Double jeopardy arguments have been advanced by civilly committed individuals and have been reviewed by the United States Supreme Court. In reviewing an argument that the Kansas Sexually Violent Predator Act (the Act) subjected a person to double jeopardy, the United States Supreme Court examined the Act to determine if the Act was civil or criminal in nature. *Kansas v. Hendricks*, 521 U.S. 346, 360-71 (1997). The United States Supreme Court stated that even though a statute is placed within the civil statutes, the label is not always dispositive. *Id.* at 361. Since the person committed argued that he was being punished, the court examined the objectives of the Act. *Id.* at 361-64. The two primary objectives of criminal punishment are retribution and deterrence. *Id.* at 361-62. Finding no evidence of retribution or deterrence in the Act and that the Act was civil in nature, the United States Supreme Court found that the Act did not violate the principles against double jeopardy. *Id.* at 369-71.

Even though section 916.303 is contained in the criminal procedure and corrections section, that label is not definitive. Upon examining sections 916.303 and 916.105, we find no evidence of retribution or deterrence. Since there is no evidence of an intent to punish a person who has been committed with the aid of section 916.303 and no evidence that section 916.303 criminalizes behavior, section 775.021(1) does not apply.

Based on the foregoing, we find that the Legislature intended section 775.021(4)(a) to be applied when determining the maximum sentence referred to in section 916.303(3). Since the trial court determined the petitioner's maximum sentence utilizing section 775.021(4)(a), it did not depart from the essential elements of law. Accordingly, the petitioner has failed to meet his burden, and we deny the petition for writ of certiorari.

DENIED.

WOLF and WETHERELL, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Andy Thomas, Public Defender, and Marcia M. Perlin, Assistant Public Defender, Tallahassee, for Petitioner.

Pamela Jo Bondi, Attorney General, and Steven Woods, Assistant Attorney General, Tallahassee, for Respondent.